10 So.2d 48

**ROSIN v. LAWRENCE BYARS USED
CAR POST et al.**

3 Div. 847.

Court of Appeals of Alabama.
Oct. 6, 1942.

Blakey, Blakey & Levin, of Montgomery,
for appellant.

Thomas & Thomas and Hill, Hill, Whiting & Rives, all of Montgomery, for appellees.

RICE, Judge.

These facts are undisputed in the testimony: A man representing himself to be Sergeant J. M. Phillips, of Maxwell Field, went to Mr. Lawrence Byars, the appellee, and proposed to sell to Mr. Byars an automobile.

Upon interrogation by Mr. Byars he stated that he owned the car, telling how he came into the ownership and possession of it; that his Commanding Officer at Maxwell Field was Lieutenant Auvil; and that he was being transferred to another location, where he would have no further need for an automobile.

Mr. Byars went to his telephone and called Lieutenant Auvil at Maxwell Field, and was told by the Lieutenant that he was the Commanding Officer of Sergeant J. M. Phillips.

Whereupon, Mr. Byars purchased the car, giving to the man who said he was Sergeant J. M. Phillips his check for $250, drawn on the Union Bank & Trust Co.

The check was delivered after banking hours; and Byars told the man to whom it was delivered to return the next morning and that he would go with him to the bank, identify him, and enable him to cash it.

But the man did not wait for morning. He went immediately to the store of Mr. Rosin, the appellant, where he purchased one or more articles, and presented the check in payment; expecting, and receiving, a large proportion of the face amount in change, in cash.

It is admitted that the man to whom Byars delivered the check was the identical man who presented it to Rosin; but that he stated to both Byars and Rosin that his name was Sergeant J. M. Phillips.

Before cashing the check Rosin called Byars on the telephone and told him that a man who said he was Sergeant J. M. Phillips was at his, Rosin's place of business with the check described hereinabove, and wanted it cashed. Rosin wanted to know of Byars if the "check was all right."

To this point, as we have indicated above, there is no dispute in the testimony. But here there is a dispute.

Rosin testified that "Mr. Byars asked me (in said telephone conversation) if he knew that the man was Sgt. J. M. Phillips." But Rosin further testified that in answer to Byars said question he told Byars he did not know that the man who had presented to him the check was Sgt. J. M. Phillips; whereas Byars testified that Rosin said, in answer to the said question: "Yes, I know him, he is a fine fellow, he is sitting right across the counter from me now." Whereupon Byars, according to his testimony, said: "Well, if you know him it's all right."

Rosin cashed the check. And a short time after he did so, on the same day, Byars discovered that the man palming himself off as Sergeant J. M. Phillips was an imposter, whose name was Hopper. And that the car was either stolen, or belonged to Hopper and was encumbered with a mortgage to a Meridian, Mississippi, concern. There was, however, a Sergeant J. M. Phillips at Maxwell Field, who owned no car, and had nothing whatever to do with this transaction. But his name was simply appropriated, without his consent, by this man Hopper.

In short, the whole thing was a hoax, perpetrated by the man Hopper, who had in possession the car which was delivered

to Byars in return for his check; but which said car was immediately, upon the day of its said delivery, turned over by Byars to its rightful owner or owners—the Meridian concern.

Byars at once called Rosin and informed him of the denouement. And the two of them, in connection with the Police Department of the City of Montgomery, made strenuous efforts to capture Hopper, the thief, but without avail. Byars at once notified the bank not to pay the check.

Quere: Who must lose this $250?

Rosin, in a way conceded to be proper to present the question, has brought this suit against Byars to recover the amount of the unpaid check.

The case was tried below before the court, sitting without a jury; and the learned Judge presiding rendered judgment in favor of the defendant, Byars, the appellee.

We have concluded his judgment must be affirmed, for reasons we will undertake to state.

■ It is, of course, we believe—though we have found no Alabama case in the reports stating so much—the law that "where the drawer (as Byars, here) delivers a check, draft, or bill of exchange to an imposter as payee, supposing that he is the person whom he has falsely represented himself to be, and that his false representations as to his ownership in respect of the property or rights furnishing the consideration for the paper are true, the imposter's subsequent indorsement of the paper in the name by which the payee is described is to be regarded as a genuine indorsement so far as the rights of subsequent parties who deal with the paper in good faith are dependent thereon; and, more specifically, that as between such a drawer and a drawee who pays the paper upon such indorsement, or between the drawer and a holder in due course who takes it upon such indorsement, the loss must fall on the drawer, assuming, of course, that the other party has not lost his original rights." See Annotation beginning on page 1435 of 112 A.L.R., which follows the report of the case of Lillian Cohen v. Lincoln Savings Bank of Brooklyn et al., 275 N.Y. 399, 10 N.E.2d 457, 112 A.L.R. 1424; also Annotations in 22 A.L.R. 1228, 1230, and in 52 A.L.R. 1326.

We would not say that we have read the opinions in all the cases mentioned in the

Annotations just next hereinabove cited, but we have referred to them all, and read a great many of them. And we have concluded that the law is soundly set forth in the quotation we have adopted above.

■ So that, if Mr. Rosin had simply received the check in question from the man to whom Mr. Byars had delivered it— the man endorsing it by the name in which he had procured it—and had paid cash for it (or "cashed" it) without any notice of any defect in it, or defense that Byars might have had against its payment, Mr. Byars would have had to reimburse Mr. Rosin for the amount of same. This because of the principle that "the drawer's right to countermand the payment of a check (and Byars had the undoubted right to so countermand the payment of the check in question upon discovery of the hoax perpetrated upon him by Hopper) can be exercised only at his own risk, and ordinarily its exercise does not discharge his liability to the holder." Michie on Banks and Banking Vol. 5 p. 398.

■ But Rosin, if he was "put on notice" of the circumstances under which Byars delivered the check to Hopper, is in no better condition about recovering the amount of same from Byars, after cashing it, than would have been the bank if it had honored the check after receiving Byars' countermand. See Peoples Savings Bank & Trust Co. v. Lacey, 146 Ala. 688, 40 So. 346, Memo.

In other words, before Rosin could successfully call upon Byars to reimburse him for the amount of the check—after Byars had stopped its payment at the bank—Rosin must have been able to show that he was an innocent "purchaser for value" of the check. Jones et al. v. Bell, 201 Ala. 336, 77 So. 998.

■ In this suit he was not able to do that. From the testimony as we have set out hereinabove it is plain that the trial court had a right to find, and his judgment shows that he did find, that Byars told Rosin before he cashed the check—in answer to Rosin's inquiry—"it's all right to cash the check if you know that the man presenting it is Sergeant J. M. Phillips." This put the burden on Rosin of ascertaining that the man presenting the check to him was Sergeant J. M. Phillips. The man was not. Rosin loses.

The judgment is affirmed.

Affirmed.