281 So.2d 431

**EAST GADSDEN BANK, East Gadsden, Alabama, a corporation,**

v.

**FIRST CITY NATIONAL BANK OF GADSDEN.**

**Civ. 157.**

Court of Civil Appeals of Alabama.

July 11, 1973.

Rehearing Denied Aug. 8, 1973.

Inzer, Suttle, Inzer & Pruett, Gadsden, for appellant.

Rains, Rains & McCurley, Gadsden, for appellee.

WRIGHT, Presiding Judge.

Plaintiff, First City National Bank of Gadsden, Alabama, brought suit against defendant, East Gadsden Bank to recover the sum of $3,627.00 paid by plaintiff to defendant. The complaint was in several counts, the gravamen of each being that plaintiff was the payor bank of a check drawn upon it by one of its depositors. That the defendant received the check as a collecting bank through one of its depositors who was a joint payee thereon; that the endorsement of the second payee was forged; that defendant accepted the check with the forged endorsement, forwarding it through banking channels with its legend of prior endorsements guaranteed to plaintiff; that the plaintiff relying on the defendant's guarantee of prior endorsements, paid the amount of the check to defendant; learning of the forged endorsement from its depositor, plaintiff credited the depositor's account with the amount of the check, notified defendant of the forgery and requested repayment. Defendant refused payment and suit resulted. The cause of action arises under Title 7A, § 4–207, Uniform Commercial Code.

To the complaint, defendant filed several pleas, including pleas 4 and 5. Demurrer was sustained by the court to pleas 4 and 5. Jury demand was withdrawn by defendant and the cause submitted to the

court upon written stipulation of the parties. Judgment thereon was entered by the court in favor of plaintiff for the amount sued for, together with interest and costs of the court. From the judgment and the sustaining of the demurrer to pleas 4 and 5, defendant East Gadsden Bank, hereinafter referred to as appellant, appeals.

We have been presented with excellent written briefs and oral argument by both appellant and defendant. This case presents for consideration the first interpretation in this state of the "imposter rule" as codified by § 3–405 of the Alabama Commercial Code. Appellant's plea 4 presents this defense.

It is the first contention of appellant that the imposter rule is an available defense to the action of appellee. In order to consider this contention it is necessary to outline the situation as stipulated, from which the case arose.

Plaintiff's depositor and drawee of the check involved is Family Savings Federal Credit Union. Family Savings is a credit union composed of employees of Goodyear Tire and Rubber Company of Gadsden, Alabama. One James Mathis was a member of the Credit Union. In January of 1970 Mathis applied to Family Savings for a loan to purchase an automobile. He furnished with his application a buyer's order on the form of Pierson Chevrolet, Inc., signed by him and purportedly signed by an authorized officer of Pierson. This order indicated that he was purchasing an automobile from Pierson for a price of $3627.00. The signature of Pierson was a forgery.

Based upon his membership and the purchase order, Family Savings issued its check drawn upon First City National Bank payable to Mathis and Pierson Chevrolet, Inc. Mathis, a depositor of East Gadsden Bank, presented there the check with his endorsement and the purported endorsement of Pierson. The endorsement

of Pierson was a forgery. Appellant purchased or accepted the check, giving Mathis in return $1,000.00 in cash and crediting his account with $2,627.00. The check was placed in usual banking channels by appellant with the accompanying warranties of §§ 3–417 and 4–207 of the Commercial Code. Appellee paid the check to appellant and charged the account of Family Savings. Family Savings subsequently notified appellee of the forged endorsement of Pierson's name and demanded credit to its account. Appellee credited the account and demanded payment from appellant. Appellant refused and defends on the basis of the imposter rule.

The imposter rule is found in Title 7A, § 3–405 of the Code of Alabama, recompiled 1958, and as pertinent is as follows:

"(1) An endorsement by any person in the name of a named payee is effective if

"(a) An imposter by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee; . . ."

The "imposter rule" is not an innovation of the "law merchant" by the adoption of the Uniform Commercial Code. It has been the basis of case law for many years and a recognized exception to the rule that a forged or unauthorized signature is wholly inoperative to transfer any interest in the instrument to which it is affixed. Alabama recognized the rule in the case of Alabama Dry Dock & Shipbuilding Co. v. Ward, 32 Ala.App. 535, 27 So.2d 710; Rosin v. Lawrence Byars Used Car Post, 30 Ala.App. 576, 10 So.2d 48.

The cases from various jurisdictions which have resulted in the application of the "imposter rule" or "imposter doctrine" have usually involved ordinary commercial checks in which an imposter has assumed

the identity of the payee. In such cases the primary liability for the loss has generally been placed upon the drawer or endorser who, being first deceived by the imposture, delivered the check to the imposter. Such result has been based upon one of two theories. The original theory used was that in delivering the check to the imposter in the belief that he was the person named as payee, the drawer intended that the imposter obtain payment thereon, and the drawee or collecting bank in paying or cashing it, upon the imposter's endorsement in the name of the payee, was merely effectuating the intent of the drawer or endorser. Another theory has been that of negligence or estoppel. This theory is based upon the maxim that as between two innocent persons the one whose act was the cause of the loss should bear the consequences. Often the courts have so relied upon and discussed these theories and others, that it is difficult to determine which theory was adopted.

In any theory however, there must have been an imposture or impersonation which caused the drawing and delivery of the check in the name of the person impersonated.

We think § 3–405(1)(a) of the Commercial Code largely removes the distinctions between the types of fraud committed by the imposter and makes clear that "imposter" refers to impersonation. Such impersonation is of an identity, either real or fictitious, with which the drawer believes he is dealing. It is stated in the official comment to § 3–405 as follows:

"'Imposter' refers to impersonation and does not extend to a false representation that the party is the authorized agent of the payee. The maker or drawer who takes the precaution of making the instrument payable to the principal is entitled to have his endorsement."

We adopt this comment as the proper intent of the statute.

There is no contention that the drawer in this case dealt with Mathis as an impersonator of Pierson Chevrolet, Inc. or that Mathis represented himself as the agent of Pierson. It was the intent of the drawer to deal both with Mathis and Pierson and it so issued the check.

Appellant presents the proposition that Mathis by presenting the forged buyers order allegedly signed by Pierson was effecting an impersonation of status. In other words, he was representing that he was purchasing an automobile from Pierson and bolstered such representation by the forged purchase order. By forging the signature of Pierson, he was impersonating Pierson, and as a result of such impersonation obtained the check with Pierson as a payee. This proposition is interesting and is to some degree supported by the decision of the Court in the case of Fidelity & Deposit Co. of Maryland v. Manufacturers Hanover Trust Co., 7 UCC 1142 (N.Y.Civ. Ct.1970). However, we do not agree with the conclusion of the Court in that case in its second aspect as exemplified by its algebraic equation.

In this case Mathis merely misrepresented to the drawer that he was purchasing an automobile and secured a loan through such misrepresentation. He strengthened his misrepresentation by a forged purchase order but he never led the drawer to believe that he had any authority to negotiate the check on behalf of Pierson, and the drawer never intended that Mathis should do so. Had there been no forged purchase order and the drawer had issued its check upon the oral representation alone of Mathis, there could be little argument that the drawer would be entitled to the endorsement of Pierson. Thus, as we see it, this is not a case for the application of the "imposter rule" but is a matter of misrepresentation implemented by forgery of the purchase order. There was no intent, fictional or otherwise, by the drawer that Mathis should supply the endorse-

ment of Pierson Chevrolet, Inc. The drawer was entitled to such endorsement and the responsibility was upon the collecting bank, East Gadsden Bank, to exercise reasonable commercial standards in accepting it for payment. Title 7A, § 4–207(1), B'ham Trust National Bank v. Central Bank & Trust Co., 49 Ala.App. 630, 275 So.2d 148; Society National Bank of Cleveland v. Capital Nat. Bank, 30 Ohio App.2d 1, 281 N.E.2d 563.

The second contention of appellee is that demurrer was improperly sustained to its plea 5. Plea 5 pleads the provisions of § 3–406 of the Commercial Code. That is, that the drawer in this case, by its negligence substantially contributed to the making of the unauthorized signature of Pierson Chevrolet, Inc., on the check, and thus is precluded from asserting the forgery against the payor bank, who paid in good faith and in accordance with reasonable banking standards. Plea 5 asserts that the payor bank had available to it as against the claim of the drawer, the defense presented by Section 3–406, and if it failed to assert or waived such defense, it could not prosecute its claim against intervening collecting banks, such as appellant.

The theory upon which appellant proceeds is derived from the provisions of § 4–406(5) of the Commercial Code and upon cited cases. Canadian Imperial Bank of Commerce v. Federal Reserve Bank of New York (N.Y.S.Ct.1970) 8 UCC Rep. Serv. 365, and Stone & Webster Engineering Corp. v. First National Bank & Trust Co. of Greenfield, 345 Mass. 1, 184 N.E.2d 358.

Section 4–406(5) states "If under this section a payor bank has a valid defense against a claim of a customer upon or resulting from payment of an item and waives or fails upon request to assert the defense, the bank may not assert against any collecting bank or other prior party presenting or transferring the item a claim based upon the unauthorized signature or alteration giving rise to the customer's claim."

■ The heading of § 4–406 is "Customer's duty to discover and report unauthorized signature or alteration." The purpose of the section is clearly to define the responsibility of a customer to its drawee bank in respect to examining its statement of account from the bank and promptly discovering and reporting any item which may contain an instrument altered after being written and delivered, or which has been payed upon the forged signature of the customer. This section can in no way be interpreted to require the customer to discover forged signatures of endorsements of payees. 10 Am.Jur. § 513 and cases cited thereunder. Requirement of such responsibility would be totally unreasonable and would tend to relieve the collecting bank, whether payor or otherwise, from the warranties and responsibilities of §§ 3–417 and 4–207. As we see it, this section provides a defense by a bank against its customer, which would not be available to any other bank or party involved in the particular transaction. For this reason, it can be seen why a payor bank who has such defense to a customer's claim, should not be allowed to fail to assert it, credit the customer's account and proceed against intervening holders in due course upon their endorsements. It is stated in the official commentary to § 4–406 that the principle of subsection 5 is "limited [in application] to defenses of a payor bank under this section."

The first cited case referred to hereinabove arises from facts appropriate to the section and we have no problem distinguishing it from the instant case. We find no fault with the holding in the latter cited case when applied to defenses available to the payor bank under § 4–406. However, we do not consider it proper to apply § 4–406(5) to forged endorsements of a payee. In such instances the collecting bank is in

as good or better position to determine if the drawer by his negligence substantially contributed to such forgery as the drawee bank and is in better position to determine if the check was paid in good faith and in accordance with reasonable commercial standards.

■ The defense of negligence of the drawer in substantially contributing to the forgery is available to the collecting bank when sued on its warranty of endorsement by the drawee bank through third party practice, and not otherwise. However, such defense would only be available if the collecting bank had paid the check in accordance with reasonable commercial standards. Section 3–406. The preclusion or estoppel of the drawer arising from negligence substantially contributing to the forgery of the payee is not available to the paying bank if it accepted and paid a check which ordinary banking standards would require it to refuse. Johnson v. First Nat. Bank of Beavers Falls, 367 Pa. 459, 81 A. 2d 95; Prudential Ins. Co. v. National Bank, 227 N.Y. 510, 125 N.E. 824, 15 A.L. R. 146. We do not consider that the provisions of § 4–406(3), Commercial Code, in the case of the forged endorsement of a payee change the rule that the collecting bank has the burden of proving its freedom from negligence in paying the check. Wussow v. Badger State Bank, 204 Wis. 467, 234 N.W. 720, 236 N.W. 687.

There is no averment in appellant's plea 5 that it accepted or paid the check in accordance with reasonable commercial standards, but to the contrary said plea affirmatively states that appellant purchased the check with the endorsement of Pierson Chevrolet forged thereon.

■ We further observe that ordinarily, as between the drawer of a check and the drawee, such drawee is bound at its peril to determine the genuineness of the endorsements upon which it is paid; it can-

not, if the drawer is free from negligence warranting his preclusion, charge against the drawer's account a check payable to a named payee and paid upon a forged endorsement. 100 A.L.R.2d 670. The negligence necessary to preclude or estop the drawer from its rights against the drawee must have been some act upon which the drawee relied or which affirmatively induced and contributed to the drawee's acceptance of the forged endorsement. Coffin v. Fidelity-Philadelphia Trust Co., 374 Pa. 378, 97 A.2d 857; Schenke v. Central T. Co., 58 Ohio App. 441, 16 N.E.2d 700; Fargo Nat. Bank v. Massey-Ferguson, Inc., 8 Cir., 400 F.2d 223. Mere laxity in the conduct of the business affairs of the drawer is not such negligence as to preclude or estop him from recovery against the drawee bank for the amount charged against his account as a consequence of the bank's payment of a check bearing a forged endorsement. Callaway v. Hamilton Nat. Bank, 90 U.S.App.D.C. 228, 195 F.2d 556, 39 A.L.R.2d 650.

■ Appellant in plea 5 undertook to relate the acts of the drawer alleged to comprise negligence. Such acts fail to constitute such negligence as a matter of law as will preclude the drawer from recovering from the drawee or which would constitute a defense by the First City National to a demand to credit the account of the drawer. The alleged act of Family Savings in accepting a forged buyer's purchase order presented to it by Mathis and issuing a check with Pierson Chevrolet Inc. as a payee concededly may have been a lax or negligent business practice, but such act did not induce or cause the East Gadsden Bank to accept the forged endorsement of Pierson. Such act of the drawer was not the proximate cause of the acceptance of the forged endorsement.

To summarize briefly, the evidence as stipulated does not amount to an imposture and thus Title 7A, § 3–405 is not a defense. The forged endorsement of Pierson Chev-

rolet, Inc. was not effective as against subsequent banks and the suit of First City National. The acceptance of a check, by purchase or for collection, is at the peril of the bank as to possible forged endorsements. American Nat. Bank v. First Nat. Bank, 130 Colo. 557, 277 P.2d 951, 99 A.L. R.2d 637.

The theory that negligence of the drawer which substantially contributed to the forgery must have been asserted by the drawee before crediting the drawer's account and proceeding against collecting banks is not applicable in this case. The provisions of § 4–406(5) do not apply to this case as the defense alleged is not of the kind prescribed by that section. To apply the theory of appellant would require the payor bank to carry the burden of first defending all claims of its depositors before proceeding against collecting banks under the warranties of §§ 3–417 and 4–207. In an action by a payor bank against a collecting bank, it is assumed that the defendant would be able by third party action to introduce the negligence of the drawer substantially contributing to the forgery of the endorsement of the payee.

We further determine that plea 5 endeavors to describe the acts of the drawer which comprise negligence, and such alleged acts do not as a matter of law constitute negligence which proximately or substantially contributed to the acceptance of the forged endorsement of Pierson Chevrolet, Inc. by appellant. Neither do the allegations of plea 4 comprise a defense under the imposter rule of § 3–405 of the Commercial Code.

For reasons stated we find no error committed by the court below and its judgment is

Affirmed.

BRADLEY and HOLMES, JJ., concur.