EMPIRE MOVING AND WAREHOUSE CORPORATION, Plaintiff-Appellee,
*v.* HYDE PARK BANK AND TRUST COMPANY, Defendant-Appellant.—
(JOHN KIERS, Third-Party Defendant.)

First District (1st Division)   Nos. 63017, 76-244 cons.

Opinion filed October 18, 1976.—Rehearing denied December 21, 1976.

Edward D. Lapperre and Vincent P. Reilly, both of Chicago (Russell, Bridewell & Lapperre, of counsel), for appellant.

Edmund M. Tobin, of Chicago (Tobin and Nix, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Empire Moving and Warehouse Corporation (plaintiff) brought action against Hyde Park Bank and Trust Company (defendant) for an

accounting and injunctional relief. Plaintiff alleged that defendant had cashed checks payable to plaintiff over unauthorized endorsements and had paid the proceeds to persons other than plaintiff. The trial court granted partial summary judgment in favor of plaintiff as to liability and as to some damages and ordered defendant to account to plaintiff for the proceeds of additional checks with provision for ascertainment of other possible damages. Defendant appeals.

In this court, defendant contends that the trial court erred in granting summary judgment in the face of genuine issues of material fact presented by the record and that plaintiff's complaint, which sought only damages, was improperly filed in chancery and failed to state a claim for an accounting. Plaintiff argues that the summary judgment was properly entered and that the complaint was properly filed in chancery.

The pertinent facts appear from the pleadings, motions and supporting affidavits filed by both sides. From June 1971 to May 30, 1974, plaintiff maintained two checking accounts with defendant. One account was exclusively for payroll purposes; the other was a general account. During this entire period, plaintiff had corporate resolutions on file with defendant providing that checks could not be drawn or negotiated on the general account without signatures of two individuals whose names were specified within the resolutions. The resolutions listed two groups of persons and required signature by one member of each group.

John Kiers was an employee of plaintiff during the time in question. His responsibilities as bookkeeper included transaction of plaintiff's day-to-day business with defendant. This generally consisted of making deposits at defendant's drive-up window. He was not an authorized signer in any capacity on plaintiff's accounts with defendant. In addition, employees of plaintiff would frequently endorse their payroll checks in blank and give the checks to Kiers to cash on his trips to the bank. Before taking the payroll checks to the bank, Kiers stamped them with a rubber stamp reflecting only plaintiff's corporate name in full, underscored with a straight solid line. The officials of plaintiff had general knowledge of the existence of the stamp. It was kept on a desk in the bookkeeper's room.

Upon the termination of Kiers' employment with plaintiff, plaintiff's officers discovered that a large number of checks issued by other persons payable to plaintiff had been cashed by defendant and the proceeds had apparently been given to Kiers. The checks in question did not bear the two signature endorsement required by plaintiff's resolution for its general account, but were merely stamped on the back with the same rubber stamp above described which Kiers had used upon the payroll checks. Plaintiff obtained copies of 16 of these checks with a total value of $9009.03. In addition, plaintiff prepared a list from its records of additional checks aggregating $91,269.31 which, it alleged, had also been

improperly cashed by defendant under the same circumstances. Plaintiff presented an affidavit by its president asserting that plaintiff had not received the proceeds of the checks in question. The affidavit of an accountant hired by plaintiff stated that he had prepared this list of checks from plaintiff's cash receipts books and that none of the checks listed were recorded as deposits in plaintiff's bank account. He further stated that copies of the 16 checks aggregating $9009.03 had been obtained by solicitation of plaintiff's customers.

Plaintiff's motion for partial summary judgment included two separate portions. The first portion of the motion sought partial summary judgment for plaintiff in the amount of $9009.03 plus interest of $600.57; predicated upon the 16 checks above described. The motion also sought a declaration of liability against defendant for additional checks payable to plaintiff which had similarly been cashed by defendant. The motion prayed further hearings of the cause on the issue of damages. A list of these checks compiled by plaintiff's certified auditor was appended to the motion.

In plaintiff's reply to defendant's memorandum in opposition to plaintiff's motion for summary judgment, plaintiff included excerpts from banking publications. The first of these, used by the American Institute of Banking, states that checks payable to a corporation should not be cashed or accepted for deposit in the account of an individual but should be deposited in the corporation's own account unless a corporate resolution authorizes otherwise. The other statement, promulgated by Bank Administration Institute, is that checks drawn to the order of a corporation should be accepted for deposit only to the account in that name. In rare cases it might be possible that specific written authority to cash these checks is on file and this should be considered before refusal by the bank to cash such checks.

In addition, plaintiff presented the affidavit of a person who had been active in bank management for over 40 years in the Chicago area, as president of two downtown banks and in connection with two other banks. He expressed the opinion that cashing of checks payable to a corporate customer by the bank instead of requiring them to be deposited in the corporation's account, absent a specific corporate resolution authorizing this practice, is contrary to good banking practice, is not in accordance with reasonable commercial standards, and constitutes a lack of ordinary care on behalf of the cashing bank.

In opposition to the plaintiff's motion for summary judgment, defendant presented the affidavit of Robert R. Vong, an employee of a firm of certified public accountants which was retained by defendant to examine books and records of plaintiff. At the time of his affidavit the examination had not been completed. He stated that in examining checks

drawn on plaintiff's account with defendant, he had found numerous payroll checks bearing a blank rubber stamp endorsement in plaintiff's name; most of which checks bore no additional endorsement in the form of signatures or restrictive marks. He had requested copies of all financial statements made for plaintiff from January 1971 through June 1974, and was advised that John Kiers had made none. He further stated that after careful examination of plaintiff's records, he had ascertained that of 90 items alleged to be checks payable to plaintiff, totalling $15,303.12, 48 items were determined to be cash and currency received by plaintiff. The total value of those 48 items was $5,813.49.

Defendant also presented an affidavit of Louis J. Lencki, Jr., its vice-president and cashier. He stated that he was chief operating officer of defendant and was familiar with its policies, procedures and practices. He had examined checks drawn on defendant by plaintiff and those payable to plaintiff and found that certain checks bore a stamped blank endorsement which consisted solely of plaintiff's name. That stamp was selected and its use was authorized by plaintiff to facilitate the cashing of its checks at defendant bank.

He further stated that defendant will not cash a check payable to a corporate bank customer except in accordance with special arrangements made with the corporation. In such case the proceeds will be delivered to the corporation's duly authorized representative. With respect to plaintiff's accounts maintained at defendant bank, a special arrangement was in effect permitting plaintiff to cash checks in excess of the bank's $200 transaction limit at its drive-in facility. This arrangement was made at the request of a senior officer of plaintiff in July 1972.

With regard to the bank's policies concerning the cashing of payroll checks for employees of a customer, the bank would require the blank endorsement of its customer prior to charging the cashed check against the customer's account. Otherwise, the bank would not usually cash such checks for anyone but the payee of the item. Prior to the institution of the instant litigation, plaintiff never directed defendant to stop honoring its blank rubber stamp endorsement on the checks cashed on such endorsement.

A summary judgment for part of the relief sought or on the issue of liability alone is specifically authorized by statute "although there is a genuine issue as to the amount of damages." (Ill. Rev. Stat. 1975, ch. 110, par. 57.) Incidentally, as we shall later discuss, this opinion deals with two appeals which we have consolidated for hearing. One of these cases (General No. 63017) deals with the summary judgment for part of the relief sought and also with the issue of liability. The remaining appeal (General No. 76-244) deals with an attempted clarification by the trial court of a specific paragraph of the order for summary judgment which

has reference only to the procedure to be used in ascertaining damages. Discussion of the entire matter falls logically into the two subdivisions of liability and damages which we will consider in that order.

Our determination of liability in turn rests upon application of legal theory bearing upon two subjects; summary judgment and possible liability of the defendant under the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 1—101 and following). The latter area requires initial attention.

The briefs in this appeal do not agree as to which section or sections of the Code are primarily applicable here. In our opinion, the situation presented by this record is governed by section 3—406 and not by section 4—406 (Ill. Rev. Stat. 1975, ch. 26, pars. 3—406 and 4—406). Section 3—406 provides:

> "Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."

Section 4—406 is a lengthy section which is headed "Customer's Duty to Discover and Report Unauthorized Signature or Alteration." It has been authoritatively held that, "The purpose of the section is clearly to define the responsibility of a customer to its drawee bank in respect to examining its statement of account from the bank and promptly discovering and reporting any item which may contain an instrument altered after being written and delivered, or which has been payed [*sic*] upon the forged signature of the customer. This section can in no way be interpreted to require the customer to discover forged signatures of endorsements of payees." *East Gadsden Bank v. First City National Bank of Gadsden* (1973), 50 Ala. App. 576, 581, 281 So. 2d 431, 434-35.

■■ Although we find no Illinois authority upon this point, the conclusion thus reached in *East Gadsden Bank* is strengthened by Illinois Code Comment (Ill. Ann. Stat., ch. 26, par. 4—406, at 544 (1963)), where the commentators state, with citation of many cases, that this subsection is in accord with pre-Code Illinois law in establishing, "The duty of a customer to examine his bank statements and to report any errors to the bank within a reasonable time * * *." The same commentators also refer, at page 549 of the same volume, to the existing public policy "in favor of imposing on customers the duty of prompt examination of their bank statements * * *." None of the checks complained of by plaintiff were drawn on plaintiff's account. Therefore it is manifest that examination by

plaintiff of its own canceled checks returned with its bank statement would have no significance or effect within the purview of section 4—406.

■■ Turning our attention then to section 3—406 of the Code above quoted, we find that it refers first to persons who by their negligence in dealing with a bank have substantially contributed to the wrongful disposition of a negotiable instrument. However, the final language of the section refers to "the reasonable commercial standards of the drawee's or payor's business." This latter language has no exact predecessor in the former negotiable instruments law. (See 50 B.U.L. Rev. 536, 547 (1970).) Consequently, Illinois cases decided before the effective date of the Code will not be helpful in construing this final language of section 3—406. In our opinion, this portion of the section is the key to a proper disposition of the case before us. The law has been established under this section of the Code that if the defendant here failed to act in accordance with the reasonable commercial standards of its business, it is precluded from relying upon the alleged negligence of plaintiff as an affirmative defense. Our research has led us to a number of authorities which support this proposition; all decided pursuant to section 3—406. Listed in chronological order, these cases are:

*Gresham State Bank v. O & K Construction Co.* (1962), 231 Ore. 106, 370 P.2d 726.

*Cooper v. Union Bank* (1973), 9 Cal. 3d 371, 507 P.2d 609, 107 Cal. Rptr. 1.

*East Gadsden Bank v. First City National Bank* (1973), 50 Ala. App. 576, 281 So. 2d 431.

*Dominion Construction, Inc. v. First National Bank* (1974), 271 Md. 154, 315 A.2d 69.

*Hermetic Refrigeration Co. v. Central Valley National Bank, Inc.* (9th Cir. 1974), 493 F.2d 476.

Also, 53 N. C. L. Rev. 1, 14 (1974).

These authorities lead directly to the conclusion that the initial and dispositive question in the case before us is whether defendant acted in accordance with the reasonable commercial standards of its business. If it did, the issue of whether plaintiff by its negligence substantially contributed to the loss is available to it. If it did not, the issue of plaintiff's negligence, if any, is not available and need not be considered.

Neither of the briefs before us has cited any of these authorities with one exception. Defendant has cited and depends upon *Cooper*. Defendant's comments are restricted to facts pointed out in *Cooper* which deal with the negligence of plaintiff in that case. It is true that the case does deal with negligence but the significance of the opinion lies in the

result reached that only where a bank has acted in accordance with reasonable commercial standards is the defense of negligence of the customer available to it.

Considering next the issue of summary judgment, we must first ascertain whether the "pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law." Ill. Rev. Stat. 1975, ch. 110, par. 57(3); *Heidelberger v. Jewel Companies, Inc.* (1974), 57 Ill. 2d 87, 92, 312 N.E.2d 601; *Carruthers v. Christopher & Co.* (1974), 57 Ill. 2d 376, 380, 313 N.E.2d 457.

The first portion of plaintiff's motion for partial summary judgment is concerned with checks payable to plaintiff aggregating $9009.03, all of which were stamped on the back with the rubber stamp above described. It is undisputed that at all material times the defendant was furnished with a proper resolution requiring that checks drawn by or payable to it could be negotiated only by signature of one member of both of two authorized groups of persons. Plaintiff's motion for partial summary judgment set out two publications pertaining to the banking business which state that checks payable to a corporation should not be cashed by a bank but accepted for deposit only to the account of the named payee. The affidavit of defendant's own vice-president and cashier confirmed the propriety and necessity of this practice.

In addition, plaintiff presented the affidavit of a banker of long experience who expressed the opinion that the cashing of these checks, instead of requiring them to be deposited in plaintiff's account, was contrary to good banking practice and was not in accordance with reasonable commercial standards. Defendant did not create any issue of fact with reference to this expression of opinion. Defendant attempted, with little real success, to overcome the force and strength of the opinion by reference to portions of the discovery deposition of this opinion witness but defendant did not present any affidavit or other contradiction to the opinion.

As above indicated, the counteraffidavit of defendant's certified accountant is not directed to this subject. His affidavit details the investigation made by him and is directed mainly to an attack upon checks which he examined in connection with the use of the rubber stamp. The affidavit goes primarily to the unfinished portions of the litigation pertaining to various checks not yet produced issued by various third parties which may have bearing upon the balance of the case other than that involved in the summary judgment proceedings. The affidavit of defendant's vice-president and cashier also mentions payroll checks issued by plaintiff and bearing the rubber stamp endorsement. These

payroll checks are actually not involved in the case before us because, so far as this record shows, all of the checks were cashed and the proceeds delivered to the employee who was payee of the check. Other portions of the affidavit speak in a general manner of the business carried out by the defendant and of various transactions at its drive-in facility. Actually, as above shown, these practices tend to establish that the defendant did not act in accordance with reasonable commercial standards.

■■ In a situation of this type where the affidavits presented in support of a motion for summary judgment are not contradicted, they must be taken as true. (*Nationwide Advertising Service, Inc. v. Kolar* (1975), 28 Ill. App. 3d 671, 329 N.E.2d 300; *Nianick v. Edgewater Beach Hotel* (1975), 28 Ill. App. 3d 33, 328 N.E.2d 82.) It follows that there is no genuine issue as to the central and dispositive pertinent fact. On this basis the partial summary judgment for plaintiff and the determination of the liability of defendant were legally proper.

■■ It remains to consider certain additional arguments advanced by defendant in its brief. Defendant contends that the rubber stamp placed upon the checks payable to plaintiff was tantamount to an endorsement in blank of the checks and therefore payment of the proceeds to plaintiff's bookkeeper was proper. This argument completely overlooks the corporate resolution which was in possession of the defendant at all times. The impress of the rubber stamp cannot under any circumstances be considered a compliance with this resolution. Also, in our opinion, the use of this rubber stamp by plaintiff's bookkeeper did not create an appearance of authority to cash the checks. Stamps of this type are in common use and if there was any appearance of authority it was created only by the bookkeeper and not by plaintiff. See *Gresham State Bank v. O & K Construction Co.* (1962), 231 Ore. 106, 113, 370 P.2d 726, cited above.

Defendant contends that in good faith it paid the proceeds of the checks to Kiers as an agent, and hence a fiduciary of plaintiff, so that defendant is not responsible for the subsequent conduct of plaintiff's fiduciary. Defendant relies on the Uniform Fiduciaries Act which provides that, "A person who in good faith pays or transfers to a fiduciary any money or other property which the fiduciary as such is authorized to receive, is not responsible for the proper application thereof by the fiduciary; * * *." Ill. Rev. Stat. 1975, ch. 98, par. 235; *Russell v. Rici* (1966), 67 Ill. App. 2d 98, 213 N.E.2d 566, *leave to appeal denied*, 33 Ill. 2d 628.

■■ We do not agree that Kiers was a fiduciary of plaintiff. The record shows that he was employed as a bookkeeper and that his authority extended only to depositing checks payable to plaintiff in plaintiff's bank account. He had no authority to cash checks payable to plaintiff or to receive cash proceeds of such checks. Kiers' practice of cashing payroll

checks of plaintiff's employees does not in any sense imply that he was also authorized to cash checks payable to plaintiff. The authority to cash the payroll checks would, of necessity, have come only from the employees who owned the checks. Any negotiation of checks payable to plaintiff would necessarily be governed by the corporate resolution lodged with defendant. To exonerate defendant here it would be obliged to prove that Kiers came into possession of the proceeds of the checks as a fiduciary and that he had authority to endorse the checks. (*Salsman v. National Community Bank* (1968), 102 N.J. Super. 482, 495, 246 A.2d 162, and cases there cited. Also, Ill. Rev. Stat. 1975, ch. 98, par. 237.) No such facts are alleged in defendant's response to plaintiff's motion for summary judgment. In fact, the direct contrary is shown by plaintiff's motion and not denied by defendant.

■■ Defendant contends that plaintiff improperly filed this action in chancery and that it should have been filed at law. Defendant urges that by thus improperly filing a case in chancery, "a shrewd litigant may be able to defeat a trial by jury." As shown above, we find that there are no material issues of fact in the instant case and therefore partial summary judgment was correctly entered by the trial court. While summary judgment may not be used to preempt the jury from trying material issues of fact, thereby depriving a litigant of his right to a jury trial, summary judgment does not deny a defendant his right to trial by jury in a case such as the one before us where no material issue of fact remains for trial. *Mitchell v. Ralston* (1971), 130 Ill. App. 2d 759, 266 N.E.2d 424.

As above shown, there are two appeals before us. Defendant made a motion to consolidate the appeals which we allowed to facilitate disposition. Plaintiff has made a motion to dismiss the subsequent appeal in General No. 76—244 on the ground that the order of the trial court entered December 3, 1975, is not a final order but is simply an order to facilitate discovery which may not be the subject of an appeal. We have taken this motion to dismiss with the case.

■■ The order of December 3, 1975, attempts to clarify the disposition made by the trial court in its final judgment previously entered regarding possible additional liability of defendant. It is directed toward the process of discovery in searching the defendant's records and seeks to apportion expenses in connection with this discovery. Therefore, in our opinion, the order of December 3, 1975, is simply an interlocutory order which is not appealable. See *Eskandani v. Phillips* (1975), 61 Ill. 2d 183, 194, 334 N.E.2d 146, and cases there cited.

The previous order entered consolidating these two appeals for hearing is vacated. The judgment order appealed from under General No. 63017 pertaining to the allowance of partial summary judgment in favor of

plaintiff for liability and for partial damages is affirmed. The appeal in General No. 76-244 is dismissed.

General No. 63017—Judgment Order Affirmed.

General No. 76-244—Appeal Dismissed.

BURKE and O'CONNOR, JJ., concur.