275 So.2d 148

**BIRMINGHAM TRUST NATIONAL BANK,**
a corporation,

v.

**CENTRAL BANK & TRUST COMPANY,**
a corporation.

**Civ. 63.**

Court of Civil Appeals of Alabama.

Jan. 24, 1973.

Rehearing Denied Feb. 7, 1973.

Mark L. Taliaferro and Mark Taliaferro, Jr., Birmingham, for appellant.

Robert E. Parsons, Birmingham, for appellee.

WRIGHT, Presiding Judge.

The Birmingham Trust National Bank brought suit for breach of warranty against Central Bank & Trust Company.

The facts out of which the suit arose are briefly as follows: On July 21, 1969, one Boehmer, a customer of Birmingham Trust, secured a loan from Birmingham Trust for the principal sum of $5500.00. The loan was granted for the purchase of a boat allegedly being manufactured for Boehmer by A. C. Manufacturing Company, Inc., of Florida. Upon signing of a note and security instruments by Boehmer granting them a mortgage upon the boat, Birmingham Trust issued its cashier's

check to Boehmer and A. C. Manufacturing Company as payees. The check was given into the possession of Boehmer.

Apparently Boehmer immediately went to Central Bank and deposited the check in an account which he had established there and to which he was the only authorized signatory. It is stipulated that the endorsement of A. C. Manufacturing Company on the check was a forgery and was upon the check when it was presented to Central Bank. The account of Boehmer was credited with the amount of the check. Central placed its legend "P.E.G." meaning in the banking business "Prior Endorsements Guaranteed" on the check on July 21, 1969, and it was received by Birmingham Trust and paid by them on July 22, 1969, to Central.

After some difficulty in collecting payments on the loan, and after it ultimately became delinquent, Birmingham Trust in the latter part of March 1970 contacted A. C. Manufacturing Company in Florida attempting to learn the location of the boat. They learned at that time that the boat had never been purchased by Boehmer. At about the same time it was learned that Boehmer had died or killed himself on January 24, 1970.

On April 27, 1970, Birmingham Trust received an affidavit from A. C. Manufacturing Company stating they had not endorsed the check or received any funds therefrom. On May 1, 1970, Birmingham Trust called upon Central for reimbursement under its warranty of prior endorsements. Central refused repayment. Thus this suit.

The amended complaint was as follows:

## "COUNT ONE

Plaintiff claims of the defendants the sum of Five Thousand Five Hundred Dollars ($5,500.00) together with interest, as damages for a breach of warranty when on, to-wit, 22 July 1969 defendants endorsed and transferred to plaintiff for payment Birmingham Trust National Bank cashier's check # 250332, dated 21 July 1969 in the amount of Five Thousand Five Hundred Dollars ($5,500.00) and plaintiff paid defendants Five Thousand Five Hundred Dollars ($5,500.00) for said check, relying on defendants' warranty that all signatures were genuine or authorized, when in fact, all signatures are not genuine or authorized as the endorsement of A. C. Manufacturing Company is a forgery. Thus defendants have breached their warranty to plaintiff, all to the plaintiff's damage in the sum aforesaid."

To the complaint defendant filed a plea of the general issue and ten affirmative pleas as follows: .

## "PLEA I

That the plaintiff itself was guilty of negligence in the handling of said cashier's check # 250332 which negligence proximately caused or contributed to the damages allegedly suffered by the plaintiff.

## "PLEA II

That the plaintiff itself was guilty of negligence in the issuance of said cashier's check which negligence substantially contributed to the damages allegedly suffered by the plaintiff.

## "PLEA III

That the plaintiff itself was guilty of negligence in acceptance and payment of said cashier's check which negligence substantially contributed to the damages allegedly suffered by the plaintiff.

## "PLEA IV

That the plaintiff failed to give notice of the unauthorized endorsement to the defendant within a reasonable time after discovery of the unauthorized endorsement, or within a reasonable time after the unauthorized endorsement could have been discovered by plaintiff upon the plaintiff's

exercise of due caution and diligence in accepting and paying the check.

## "PLEA V

That the plaintiff failed to exercise reasonable diligence in discovering the unauthorized endorsement upon the plaintiff's acceptance, payment and other handling of said cashier's check.

## "PLEA VI

That the plaintiff failed to give the defendant reasonably prompt notice of the unauthorized endorsement after its discovery, or after the unauthorized endorsement could have been discovered upon the exercise by the plaintiff of ordinary care in the examination, acceptance, payment and other handling of the check.

## "PLEA VII

That the plaintiff itself was guilty of negligence which proximately caused or contributed to damages allegedly suffered by plaintiff in that the plaintiff failed to exercise reasonable care and promptness in examining the cashier's check and the endorsement thereon.

## "PLEA VIII

That the plaintiff to the detriment of the defendant unjustifiably impaired the collateral which secured the payment of the proceeds of the cashier's check.

## "PLEA IX

The plaintiff waived its claim of breach of warranty against the defendant.

## "PLEA X

The defendant is not liable to the plaintiff for any breach of warranty for the reason that the plaintiff was guilty of laches after the plaintiff paid the cashier's check."

Demurrer to the pleas was overruled. Such ruling by the court is assigned as error.

The clear purpose of Pleas I through VII was to charge contributory negligence to plaintiff. Pleas I and II are designed to charge negligence to Birmingham Trust in the issuing of the check or in the manner in which it issued it. Pleas III, V, and VII allege negligence in accepting and paying the check after it had been endorsed by Boehmer, deposited with Central, and forwarded to Birmingham Trust for payment. Let us hasten to say that what we have said in the preceding sentence is not in the words of the pleas, but amounts to our construction or conclusion from the allegations of the pleas. Pleas IV and VI appear designed to charge negligence by Birmingham Trust in giving notice of the forged endorsement after discovery of it or in failing to give notice after the endorsement could have been discovered by use of ordinary care. Pleas VIII, IX and X are so insufficient and conclusionary in allegation as to utterly fail to inform as to their basis or purpose.

Plaintiff by demurrer charges that the pleas are mere conclusions and state no basis in fact for a charge of contributory negligence. We think such demurrer is well taken as to those pleas alleging negligence, both before and after the endorsement of the check.

"To support a claim of contributory negligence, the plea must aver facts which raise a duty to defendant imposed on plaintiff by law and a negligent breach of that duty which must be shown by the allegation of the plea to have been a proximate contributing cause of plaintiff's injuries." Williams v. Pope, 281 Ala. 382, 203 So.2d 105; Walker v. Bowling, 261 Ala. 46, 72 So.2d 841.

Plea I merely alleges as a conclusion that plaintiff was "guilty of negligence in the handling" of the check. Plea II avers that plaintiff was guilty of negligence in the "issuing" of the check. Plea III avers plaintiff was guilty of negligence in acceptance and payment of the check. Plea V avers that plaintiff failed to exercise

reasonable diligence in discovering the unauthorized endorsement. Plea VII avers negligence for failure to exercise "reasonable care and promptness in examining the check." None of these allegations aver facts which raise a duty owed to defendant imposed upon plaintiff by law or a negligent breach of that duty. Pleas II, III, IV, V, VI and VII fail to charge that the concluded negligence of plaintiff proximately contributed to plaintiff's damages. Pleas II and III rather charge that plaintiff's negligence "substantially contributed" which cannot be said to be the same as a proximate contribution. All of the aforesaid pleas are insufficient in substance and form and demurrer should have been sustained.

The cause of action brought here by Birmingham Trust arose under the provisions of Title 7A, § 4–207 which in pertinent part are as follows:

"§ 4–207. Warranties of customer and collecting bank on transfer or presentment of items; time for claims.—(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that

"(a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; and. . . .

"(3) The warranties and the engagement to honor set forth in the two preceding subsections arise notwithstanding the absence of indorsement or words of guaranty or warranty in the transfer or presentment and a collecting bank remains liable for their breach despite remittance to its transferor. Damages for breach of such warranties or engagement to honor shall not exceed the consideration received by the customer or collecting bank responsible plus finance charges and expenses related to the item, if any.

"(4) Unless a claim for breach of warranty under this section is made within a reasonable time after the person claiming learns of the breach, the person liable is discharged to the extent of any loss caused by the delay in making claim. (1965, No. 549, effective midnight Dec. 31, 1966)."

■ The above quoted provisions of the Uniform Commercial Code codifies the theory of implied warranty of the genuineness of prior endorsements which was the accepted general rule as to transactions between collecting banks and drawee banks prior to the Uniform Commercial Code. This provision of the Code places the burden directly upon the first bank in the collection chain to make sure that endorsements on a check are valid. The reason for such requirement is that the first bank is in a better position to insure that the one presenting the check has good title than subsequent banks or the payor bank. Security Savings Bank v. First National Bank, 6 Cir., 106 F.2d 542, and cases there cited; Clearfield Trust Co. v. United States, 318 U.S. 363, 744, 63 S.Ct. 573, 87 L.Ed. 838. This is different from the rule of Price v. Neal, 3 Burrows 1254, which is that the drawee bank is presumed to know the signature of his customer, the drawer. This is the principle contended for by appellee in brief—that is, that in spite of the warranty of the collecting bank (Central) that it had good title to the check and all signatures and endorsements thereon were genuine and authorized, there yet remained a duty on the payor or drawee (Birmingham Trust National), to check or verify the genuineness of all endorsements before it paid the check.

■ Such principle does not apply to endorsements on a check as it may to a drawer's signature or to the drawees' signature. There is no duty either under law merchant or under Uniform Commercial Code for a drawee bank to verify the endorsement of a payee on a check which comes to it from a collecting bank under a

warranty of endorsement. County Trust Co. v. Pachck Valley Bank & Trust Co. 225 A.2d 605, 93 N.J.Super. 252; Clearfield Trust Co. v. United States, supra.

It is stated in the *Clearfield Trust* case that the drawee's right to recover from the collecting bank accrues when the drawee makes payment. The warranty of the endorsements is breached at that time. The court said in *Clearfield* "there is no other barrier to the maintenance of the cause of action."

■ It was the payment of the check to Central, who had no legal right to collect it, (because of the forged endorsement) which constituted Birmingham Trust's loss. It was the responsibility of Central to determine that the endorser and the payee were one and the same. Central's warranty, and the requirement of § 4–207, even in the absence of such express warranty, were designed to protect Birmingham Trust from the failure of Central to fulfill its responsibility. First Nat. Bank v. Liberty Nat. Bank & Trust Co. (Okla.), 392 P.2d 747; Hibernia Nat'l Bank v. Nat'l Bank of Commerce, 204 La. 777, 16 So.2d 352; First Nat'l Bank of Mineola v. Farmers & Merchants State Bank, Tex.Civ.App. 417 S.W.2d 317; Society Nat'l Bank of Cleveland v. Capitol Nat'l Bank, 30 Ohio App.2d 1, 281 N.E.2d 563.

It is clear that there was no duty upon Birmingham Trust to discover the forgery of the endorsement, either prior or subsequent to payment of the check to Central. A plea or evidence of negligence in that respect is no defense to the action on the breach of warranty.

Appellee attempted to plead that the failure of Birmingham Trust to promptly, or within a reasonable time after discovery of the forgery, to notify Central of the forged endorsement was a defense of contributory negligence and a bar to recovery by Birmingham Trust. The trial court gave written charges requested by appellee

to that effect. Such defense is not available as a bar to recovery.

In brief, appellee cites the case of Market St. Title & Trust Co. v. Chelton Trust Co., 296 Pa. 230, 145 A. 848, in support of the above proposition. This case is not applicable to the case at hand because it involved the forgery of the signature of a depositor of the drawee bank. The drawee bank attempted to recover from collecting bank after payment. The court correctly, and in line with the principle of Price v. Neal, supra, stated hereinabove, placed the burden of discovery and prompt notice of the forgery on the drawee. It stated that injury or damage to the defendant was presumed by the mere fact of delay. The following statement from *Clearfield* expresses the reaction of the United States Supreme Court to the application of the case of a forged endorsement of a payee:

"But we do not think that he who accepts a forged signature of a payee deserves that preferred treatment. It is his neglect or error in accepting the forger's signature which occasions the loss. See Bank of Commerce v. Union Bank, 3 N.Y. 230, 236. He should be allowed to shift that loss to drawee only on a clear showing that the drawee's delay in notifying him of the forgery caused him damage."

This statement conforms most completely with the words of § 4–207 previously set out herein. We quote it again

"§ (4) Unless a claim for breach of warranty under this section is made with a reasonable time after the person claiming learns of the breach, the person liable is discharged to the extent of any loss caused by the delay in making claim. . . ."

■ The evidence in this case was that a statement was obtained by Birmingham Trust from A. C. Manufacturing Company that the endorsement was a forgery on April 27, 1970, and claim was made to Central on May 1, 1970. There

was no evidence that any damages accrued to Central after discovery and prior to making of the claim. In fact, the evidence of appellee was that the account of Boehmer in Central was closed with an overdraft in October 1969, and that Boehmer died on January 24, 1970. Thus it is that there was no evidence that Central suffered any loss from a delay by Birmingham Trust in making a claim after discovery of the forgery. Therefore, we hold that the court erred in refusing the following requested charge of plaintiff:

> "K. The court charged the jury that under the law of this state the Central Bank and Trust Company has not proved that it is entitled to set off any loss against its obligations resulting from any alleged failure of the Birmingham Trust National Bank to notify Central Bank and Trust Company of the forgery." In light of what we have stated the law to be above, we further hold it error for the court to have refused the following requested charges of plaintiff.

> "A. The court charges the jury that the Birmingham Trust National Bank owed no duty to Central Bank and Trust Company to discover the forgery.

> 2. Gentlemen of the jury, the court charges you that the Birmingham Trust National Bank did not owe any duty to Central Bank and Trust Company, the defendant, to notify it of any unauthorized endorsement of the $5500.00 check until Birmingham Trust National Bank did in fact learn of the forgery."

Though the errors discussed herein are not all the errors assigned by appellant, many of those assigned are not argued in brief and are considered waived under Supreme Court Rule 9. Others argued to some degree, but not discussed herein, are pre-termitted as the cause must be deemed reversed on other grounds.

Reversed and remanded.

BRADLEY and HOLMES, JJ., concur.