GUARANTY BANK & TRUST CO., a State Banking Corporation, Plaintiff,

v.

FEDERAL RESERVE BANK OF KANSAS CITY, a Federal Banking Corporation and the First National Bank, Yukon, Oklahoma, a State Banking Corporation, Defendants and Third-Party Plaintiffs,

v.

Kenneth W. KINSEY, Third-Party Defendant.

No. CIV–76–0940–T.

United States District Court, W. D. Oklahoma.

Aug. 25, 1977.

3. *Skinner v. Oklahoma,* 316 U.S. 535, 541–42, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

James E. Britton, McClelland, Collins, Sheehan, Bailey & Bailey, Oklahoma City, Okl., for plaintiff.

James R. Stout and Thomas C. Williams, Wheatley & Stout, Yukon, Okl., for defendants and third-party plaintiffs.

Jerry L. Hemry, Hemry & Hemry, Oklahoma City, Okl., for Garn Mattlingly Pools, Inc.

## ORDER GRANTING SUMMARY JUDGMENT

RALPH G. THOMPSON, District Judge.

Guaranty Bank and Trust Company (Guaranty) has moved for summary judgment on its claim of breach of warranty against Federal Reserve Bank of Kansas City (Reserve) and The First National Bank of Yukon (Yukon Bank). Guaranty bases its claim for breach of warranty on 12A O.S.1971, § 4–207. From a careful review of the facts admitted in the pleadings, established by affidavit and appearing from the depositions, the Court has concluded that no genuine issue as to any material fact exists and that the plaintiff is entitled to judgment as a matter of law.

The facts established by the record are briefly as follows: On April 13, 1976, Kenneth W. Kinsey (Kinsey) secured a cashier's check in the amount of $3,500.00 from Guaranty as proceeds for an automobile loan. The cashier's check was issued naming C. J. Tate & Son Construction payee. Kinsey had represented to Guaranty that he was employed by C. J. Tate & Son Construction and that he was purchasing a pickup from them. Guaranty gave the check to Kinsey for delivery. Kinsey forged the endorsement of C. J. Tate & Son Construction and D. L. Tate. He then deposited the funds in the account of D. L. Tate at the defendant Yukon Bank. Upon learning that the money had been deposited in his account without his knowledge or authorization, D. L. Tate made demand upon Yukon Bank to remove the funds from his account. Yukon Bank issued an advice marked "deposit in error Kinsey" and issued a cashier's check payable to Kinsey. Yukon Bank gave the cashier's check to D. L. Tate who then delivered it to Kinsey. D. L. Tate is Kinsey's stepfather.

Yukon Bank sent Guaranty's cashier's check through the Federal Reserve Bank of Kansas City for collection and upon presentation it was paid by Guaranty Bank. Both Yukon Bank and Reserve endorsed the check P.E.G. which in banking practice means "prior endorsements guaranteed."

Upon Kinsey's failure to pay the July payment on his loan on Guaranty when it was due on July 15th, Guaranty contacted D. L. Tate to determine both the whereabouts of Kinsey and the pickup. Through its conversation with D. L. Tate, Guaranty

learned that Kinsey had never worked for the construction company nor had the company sold Kinsey a pickup. Through further conversation it was determined that the endorsement of C. J. Tate & Son Construction and D. L. Tate had been forged on the cashier's check.

Guaranty then made immediate demand on both Reserve and Yukon Bank for return of the funds which it had paid to them over the forged endorsement. This demand was refused by both defendant banks and this lawsuit resulted.

■ On the basis of these uncontroverted facts, the Court concludes that both defendant banks have, as a matter of law, breached their implied warranties provided in section 4–207 of the Uniform Commercial Code and are liable thereon to Guaranty. 12A O.S.1971, § 4–207 provides in pertinent part:

"(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that

"(a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; . . ."

Upon the receiving the item over a forged endorsement, the Yukon Bank failed to acquire good title to the cashier's check. This same result would obtain in the absence of both defendant banks having endorsed the instrument P.E.G. Section 4–207 is intended to effect this same result which was achieved prior to the enactment of the Uniform Commercial Code by such an endorsement. The Code Redactors Comment 2 to this section reads in part as follows:

"2. In addition to imposing upon customers and collecting banks the warranties and engagements imposed by the original sections 65 and 66 of the Uniform Negotiable Instruments Law and those of section 3–414 and 3–417 of Article 3, with some variations, this section 4–207 is intended to give the effect presently obtained in bank collections by the

words 'prior endorsements guaranteed' in collection transfers and presentments between banks. The warranties and engagements arise automatically as a part of the bank collection process."

■ The defendant banks have interposed two defenses. They first allege that the manner in which Guaranty negotiated the loan to Kinsey and the fact that they delivered the cashier's check into his possession for delivery to the purported seller constitute negligence and that such negligence should be a bar to its recovery from these defendants. In support of this claim they rely on 12A O.S.1971, § 3–406 which provides:

"Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with reasonable commercial standards of the drawee's or payor's business."

The Court rejects this contention. It would be most difficult for any trier of fact to find that Yukon Bank, with knowledge that the purported endorser was objecting to receipt of the instrument proceeds, acted in a commercially reasonable manner or in accordance with the reasonable commercial standards of its business when it paid the $3,500.00 by its own cashier's check to the one who had made the unauthorized signature and wrongful deposit. There is no evidence in the record to establish what the reasonable commercial standards would be in such a situation. This is an issue which is not necessary to determine on this Motion for Summary Judgment.

Even if we assume that the Yukon Bank is a proper party to assert such a defense, it still lacks merit. Under the uncontroverted facts before the Court, the manner in which Guaranty negotiated the loan with Kinsey and their delivery of an instrument to one not named as payee, are as a matter of law,

not negligence which can be held to have substantially contributed to the making of the unauthorized signature in this case. *First National Bank of Yukon v. Liberty National Bank and Trust Company*, 392 P.2d 747 (Okl.1964); *East Gadsden Bank v. First City National Bank of Gadsden*, 50 Ala.App. 576, 281 So.2d 431 (1973); *Society National Bank of Cleveland v. Capital National Bank*, 30 Ohio App.2d 1, 281 N.E.2d 563 (1972); and *Birmingham Trust National Bank v. Central Bank and Trust Company*, 290 Ala. 362, 275 So.2d 148 (Ala.1973).

*Birmingham Trust National Bank v. Central Bank and Trust Co.*, supra, involves a factual situation much similar to that involved here. There, a Birmingham Trust made a loan to one Boehmer for $5,500.00 on his representation that he was purchasing a boat from A. C. Manufacturing Company. Birmingham Trust issued a cashier's check for $5,500.00, naming as payee both Boehmer and A. C. Manufacturing Company and delivered the check into the possession of Boehmer. Boehmer then endorsed his name on the check and forged that of A. C. Manufacturing Company. He deposited the check in an account which he had with Central Bank and Central Bank sent the check for collection to Birmingham Trust endorsed P.E.G. When Birmingham Trust experienced difficulty in collecting loan payments, it contacted A. C. Manufacturing Company only to learn that Boehmer had never purchased the boat. Birmingham Trust then contacted Central Bank and learned that Boehmer's account had been closed out with an overdraft and he had died some months previous. The Court rejected Central Bank's plea that Birmingham Trust was guilty of negligence in the issuance of the cashier's check which negligence "substantially contributed to the damages allegedly suffered by the plaintiff". Although it may be said that the Court's quibbling over the terminology "substantially contributed" versus a plea of "proximate contribution" indicate that the Court failed to consider the provisions of section 3–406, the defendants herein have cited no case which would establish duty on the part of a maker of an instrument to

deliver that instrument into the hands of the named payee. Further, it is clear that the misrepresentations of Kinsey to Guaranty Bank do not make him an imposter within the provisions of section 3–405(1)(a) and to render his endorsement effective. The second paragraph of Comment 2 to that section provides:

> " 'Imposter' refers to impersonation, and does not extend to a false representation that the party is the authorized agent of the payee. The maker or drawer who takes the precaution of making the instrument payable to the principal is entitled to have his indorsement."

This same reasoning should apply equally to a maker or drawer who takes the precaution of making an instrument, representing proceeds of a loan, payable to the seller of goods which are to secure that loan. *East Gadsden Bank v. First City National Bank of Gadsden*, supra.

Mere laxity in the conduct of the business affairs of the drawer is not such negligence as would preclude or estop him from challenging payment over an unauthorized signature. *East Gadsden Bank v. First City National Bank of Gadsden*, supra. It is the payment of the cashier's check to the defendants, who had no legal right to collect on it, which constitutes plaintiff's loss in this case. It is clear that the defendants' actual and statutory guarantees were designed to cause this payment. *First National Bank of Mineola v. Farmers and Merchants State Bank*, 417 S.W.2d 317 (Tex. Civ.App.1967); *Society National Bank of Cleveland v. Capital National Bank*, supra, and *Birmingham Trust National Bank v. Central Bank and Trust Co.*, supra. It is the breach of these defendants' representations that they had a legal right to collect which forms the basis of their liability here. 12A O.S.1971, § 4–207(1)(a).

Defendants next assert that the forged signature was ratified by D. L. Tate, an agent of the named payee, and therefore Yukon Bank's payment over this signature was proper. Defendants base this argument on 12A O.S.1971, § 3–404(2) which section provides:

"Any unauthorized signature may be ratified for all purposes of this Article. Such ratification does not of itself affect any rights of the person ratifying against the actual signer."

The Code Redactors Comment 3 to section 3–404 lends insight to the meaning of that section:

"3. Subsection (2) is new. It settles the conflict which has existed in the decisions as to whether a forgery may be ratified. A forged signature may at least be adopted; and the word 'ratified' is used in order to make it clear that the adoption is retroactive, and that it may be found from conduct as well as from express statements. Thus it may be found from the retention of benefits received in the transaction with knowledge of the unauthorized signature; and although the forger is not an agent, the ratification is governed by the same rules and principles as if he were.

"This provision makes ratification effective only for the purposes of this Article. The unauthorized signature becomes valid so far as its effect as a signature is concerned. The ratification relieves the actual signer from liability on the signature. It does not of itself relieve him from liability to the person whose name is signed. It does not in any way affect the criminal law. No policy of the criminal law requires that the person whose name is forged shall not assume liability to others on the instrument; but he cannot affect the rights of the state. While the ratification may be taken into account with other relevant facts in determining punishment, it does not relieve the signer of criminal liability."

■ Ratification is the adoption by a principal of a voidable contract made by an agent, but to be binding the principal must have full knowledge of all material facts at the time he acts. *First National Bank v. Alton Mercantile Co.*, 18 F.2d 213 (8th Cir., Okl.1927), and *Statser v. Chickasaw Lumber Company*, 327 P.2d 686 (Okl.1958). As indicated by the comments to section 3–404, the retention of benefits by the principal from

the unauthorized transaction of a purported agent is a major element in finding ratification. See also *Yellowjacket Boat Company v. Little Glasses Corporation*, 338 P.2d 1105 (Okl.1959).

■ Here there is no evidence which would form the basis of any claim that D. L. Tate accepted any benefit from the unauthorized signature of Kinsey. Neither is there any action by Tate which would constitute such dominion and control over the proceeds of the cashier's check to indicate that he viewed the funds as his own. The Court views this defense as being insufficient to establish any genuine issue of material fact to warrant a trial in this case.

■ The final issue which the Court must determine in relation to the plaintiff's Motion for Summary Judgment is the plaintiff's entitlement to attorney's fees. In requesting attorneys fees the plaintiff relies upon 12 O.S.1971, § 936 which provides that attorneys fees shall be allowed in any civil action to recover on a negotiable instrument. The defendants object to an award of attorneys fees in this case under the cited statute citing *Security Bank and Trust Company v. Federal National Bank and Trust Company of Shawnee*, 554 P.2d 119 (Okl.App.1976). Therein, Division Two of the Oklahoma Court of Appeals distinguished a suit to collect on a negotiable instrument and a suit, such as that here, seeking to collect for a breach of warranty in relation to a negotiable instrument. The Court finds it unnecessary to distinguish this case because section 4–207 of the Uniform Commercial Code itself provides for attorneys fees to be awarded as expenses in an appropriate case. See Codal Redactors Comment 5. The Court concludes that this is an appropriate case.

Guaranty's original prayer was for $3,500.00, the face amount of the cashier's check. However, during the pendency of this lawsuit Kinsey has paid to Guaranty a total of $1,800.00. With leave of Court, Guaranty has accepted these payments and reduced its prayer accordingly. Therefore, it will be the judgment of the Court that plaintiff shall recover against these defend-

ants the principal amount of $1,700.00 plus expenses in the form of attorneys fees in the amount of $500.00 for a total judgment of $2,200.00. There is no genuine issue as to any material fact, the plaintiff is therefore entitled to a judgment as a matter of law and the plaintiff's Motion for Summary Judgment is granted.

It is so ordered this 25th day of August, 1977.