VALLEY BANK & TRUST COMPANY, a
Utah corporation, Plaintiff
and Appellant,

v.

ZIONS FIRST NATIONAL BANK, a
National Banking Association,
Defendant and Respondent.

No. 17875.

Supreme Court of Utah.

Oct. 28, 1982.

Gary Doctorman, Salt Lake City, for plaintiff and appellant.

Gifford W. Price, R. Willis Orton, Salt Lake City, for defendant and respondent.

OAKS, Justice:

Defendant Zions Bank presented two cashier's checks for $12,500 to plaintiff Valley Bank and received payment. These cashier's checks, on which Valley Bank was drawer and drawee, were payable to "Peck & Shaw Fine Cars" and to an individual joint payee, Steven J. Gibbs on one check and Jeffrey Olson on the other. When paid by Valley Bank, each check was endorsed with the name of both joint payees and also

bore Zions Bank's notation, "PEG" (prior endorsements guaranteed). After Valley Bank learned that the Peck & Shaw endorsements were forgeries, it brought this action against Zions Bank to recover on Zions' guarantee of endorsements or for breach of Zions' warranty of good title, as provided in U.C.A., 1953, § 70A–3–417(1) and § 70A–4–207(1). The question in this appeal is whether the district court correctly granted summary judgment to Zions Bank on the basis that the manner in which these cashier's checks were obtained excused Zions Bank (the collecting bank) from its normal liability to Valley Bank (the payor bank) for obtaining payment on a forged endorsement.

A cashier's check is a bill of exchange on which the payor bank is both the drawer and drawee. *Neve Welch Enterprises, Inc. v. United Bank,* Utah, 628 P.2d 1295, 1296 (1981). Rights with respect to cashier's checks are governed by Chapters 3 and 4 of the Uniform Commercial Code, as enacted in U.C.A., 1953, tit. 70A.

█ It is settled beyond argument that a collecting bank obtaining payment on a cashier's check bearing a forged endorsement is liable upon its warranty of good title and its guarantee of endorsements to the payor bank. *Birmingham Trust National Bank v. Central Bank & Trust Co.,* 49 Ala.App. 630, 275 So.2d 148 (1973); *Twellman v. Lindell Trust Co.,* Mo.App., 534 S.W.2d 83 (1976); *Maddox v. First Westroads Bank,* 199 Neb. 81, 256 N.W.2d 647 (1977); *First National Bank of Mineola v. Farmers & Merchants State Bank,* Tex.Civ. App., 417 S.W.2d 317 (1967); *Guaranty Bank & Trust Co. v. Federal Reserve Bank of Kansas City,* 454 F.Supp. 488 (W.D.Okla. 1977). This statutory liability under U.C.C. sections 3–417(1) and 4–207(1) duplicates the liability incurred by the guarantee of prior endorsements, *Twellman v. Lindell Trust Co.,* 534 S.W.2d at 98; *Guaranty Bank & Trust Co. v. Federal Reserve Bank of Kansas City,* 454 F.Supp. at 490, which Zions Bank entered upon these cashier's checks.

Zions Bank has three arguments to avoid the effect of the normal rule of liability. On the basis of one or more of these arguments, it prevailed by summary judgment.

First, Zions Bank argues that Valley Bank cannot recover damages sustained in respect to cashier's checks for which it previously received payment. Specifically, Zions cites the fact that Gibbs and Olson each obtained his cashier's check by executing a note and security agreement promising to pay Valley Bank $12,500 plus finance charges and granting Valley Bank a security interest in a new automobile (serial number noted in the agreement) he intended to purchase from Peck & Shaw with the proceeds.[1] Zions argues that Gibbs and Olson each used his loan proceeds to pay for his cashier's check, in consequence of which Valley has previously received payment and cannot recover a second time on Zions' guarantees and warranties. Similar arguments were made and rejected in *First National Bank of Mineola,* 417 S.W.2d at 326–28 (cashier's checks purchased with bad check), and in an earlier case decided under the comparable provision of the Negotiable Instruments Law, *City Bank v. Hamilton National Bank of Washington,* 108 F.2d 588 (D.C.Cir.1939) (cashier's check purchased with promissory notes that remained unpaid). As held in those cases, this previous-payment argument is without merit.

█ Even if a cashier's check were originally purchased with cash, its subsequent payment on a forged endorsement would subject the collecting bank to the statutory liability to the payor bank. In that event, the payor bank would not be recovering an amount beyond its payouts and liabilities. Its statutory recovery from the collecting bank would merely make the payor bank whole for the amount it had

---

1. Valley Bank attempted to assure its acquisition of the security interest by the terms of a restrictive endorsement specified on the reverse side of the cashier's check to the effect that the endorser acknowledged full payment for the identified automobile and agreed to forward the title certificate to Valley Bank with the Bank's lien entered thereon. Valley Bank never received the title certificate on either automobile.

paid to the collecting bank on a check with a forged endorsement. The payor bank would remain liable to pay the cashier's check, properly endorsed, and would even be liable to the owner of the cashier's check for any damages he sustained from the conversion involved in the payor bank's paying that check on a forged endorsement. U.C.A., 1953, § 70A–3–419(1)(c); *Cooper v. Union Bank,* 9 Cal.3d 123, 127, 136–37, 507 P.2d 609, 612, 619–20, 107 Cal.Rptr. 1, 4–5, 11–12 (1973). Similarly, in this case Valley Bank remains liable as drawer and drawee to the owner of the cashier's checks for their face amount. The previous payments it received in the form of the Gibbs and Olson promissory notes and purported security agreements were payments for its liability on the cashier's checks, not payments that can be used to forestall the statutory liability a collecting bank incurs to a payor bank that makes payment on forged endorsements.

■ Second, Zions Bank argues that Valley Bank is barred from recovery by the rule precluding a party from pursuing inconsistent remedies. This argument asserts that Valley Bank's actions against Gibbs and Olson on their defaulted promissory notes and for fraudulently procuring the loans constituted such an election. But the remedies are not inconsistent, as explained above. In respect to each of these cashier's checks, Valley Bank has made a payout to the collecting bank and has a continuing liability to the owner of the check. Valley Bank is entitled to pursue different remedies to attempt to make itself whole in respect to both transactions.

■ Finally, Zions Bank argues that Valley Bank's action is barred by U.C.A., 1953, § 70A–3–405(1)(a), because Valley's issuance of cashier's checks payable to Peck & Shaw on the basis of phony dealer documentation presented by Gibbs and Olson involved Valley Bank in the "imposter situation" covered by that statute. This argument fails because, according to the Comments to the Uniform Commercial Code, the cited statute only refers to "impersonation," and does not extend to a false repre-

sentation that a party is the authorized agent of the payee. *See Maddox v. First Westroads Bank,* 199 Neb. at 90, 256 N.W.2d at 653. "This same reasoning should apply equally to a maker or drawer who takes the precaution of making an instrument, representing proceeds of a loan, payable to the seller of goods which are to secure that loan." *Guaranty Bank & Trust Co. v. Federal Reserve Bank of Kansas City,* 454 F.Supp. at 491. We agree.

The summary judgment for Zions Bank being contrary to law, the judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion. Costs to appellant.

HALL, C.J., and HOWE, STEWART and DURHAM, JJ., concur.