Irving Younger, J.
Loretta Waite (“ Loretta ”) had a savings account at the Fourth Federal Savings and Loan Association of New York (“ Federal ”), where, on February 17, 1969, somebody appeared and presented a withdrawal order for $2,000. The signature on the order looked like the signature on Loretta’s account card. Federal honored the order. It drew a check on its bank, Manufacturers Hanover Trust Company (“Manufacturers ”), for $2,000, payable to Loretta’s order, debited Loretta’s savings atieount in the sum of $2,000, and delivered the check to the person presenting the withdrawal order. On the same day — February 17 — the check was indorsed “Loretta Waite ” and deposited at First National City Bank’s branch on Madison Avenue and 42nd Street (“First National”). First National placed its indorsement on the check. In due course, Manufacturers paid the check by crediting First National and debiting Federal, each in the sum of $2,000.
On February 27, 1969, somebody appeared at Federal’s office and presented a second withdrawal order, this time for $1,000. The signature on the order looked like the signature on Loretta’s account card. Federal honored the order. It drew a check on Manufacturers for $1,000, payable to Loretta’s order, debited Loretta’s savings account in the sum of $1,000,. and delivered the check to the person presenting the withdrawal order. On the same day — February 27 — the check was indorsed “ Loretta Waite” and “split deposited” — meaning that some of the proceeds were deposited and some paid out in cash — at First *962 National. First National placed its indorsement on the check. In due -course, Manufacturers paid the check by crediting First National and debiting Federal each in the sum -of $1,000.
Loretta did not sign these withdrawal orders, nor did she indorse these checks. The four signatures, one on each of the two withdrawal orders and one on each of the two checks, are identical with each other. The hand that wrote them, Loretta testified, is that of her former husband,, Wolfgang, who had visitation rights in her home and access to her savings account passbook.
Loretta had no account at First National. However, there was an account at First National in the name of Elizabeth Ann Waite (“ Elizabeth Ann ”). Two thousand dollars were deposited in that account on February 17 and $900 on February 27.
When Loretta informed Federal of the unauthorized withdrawals, Federal credited her account in the sum of $3,000 and assigned its claim against Manufacturers to its surety company, Fidelity and Deposit Company of Maryland (“Fidelity”). Manufacturers declined to remit the $3,000 to Fidelity, which thereupon commenced the present action, contending that Manufacturers should not have paid on a forged indorsement. Manufacturers impleaded First National on the theory that First National’s indorsements guaranteed the prior indorsements in Loretta’s name. First National impleaded Elizabeth Ann on the theory that she had received the proceeds of the checks in issue. Manufacturers and First National raise the so-called “impostor” defense to plaintiff’s claim. Elizabeth Ann has defaulted.
The decision, then, turns on the impostor defense. If it fails, plaintiff must prevail and liability be allocated among the defendants. If it succeeds, the complaint is dismissed.
We start by drawing inferences from the bare and mysterious facts of record.
The obvious first. Who forged Loretta’s signature on the withdrawal orders and checks 1 Her former husband, W olf gang.
Where did the money go 1 All but $100 of it into Elizabeth Ann’s account at First National. No other answer serves to explain the concatenation of notations on the checks and entries in the bank ledgers. Counsel has stated in open court that Elizabeth Anri is Wolfgang’s present wife, and so I conclude that Wolfgang and his wife collaborated in this scheme to extract funds from Loretta’s savings account.
Now to the events of February 17 and February 27 at Federal’s office. One possibility: on each of those days, a withdrawal order was presented over the counter. A teller compared the *963 signature with the signature on Loretta’s account card. They appeared to be the same. The teller did not ask the customer to countersign the withdrawal order (although, as common knowledge has it, when someone other than the depositor hands a teller a duly signed withdrawal order, the teller directs that person to indorse the withdrawal order, usually on the reverse side). Why did the teller fail to ask for a countersignature? He thought it unnecessary. Why? He took the person presenting the withdrawal order for Loretta. Why? The person before him was a female. Who? Elizabeth Ann, Wolfgang’s confederate in fraud.
Alternatively, perhaps Wolfgang himself presented the withdrawal orders at Federal, informing the teller that he was authorized by Loretta to do so, and for some reason the teller accepted his statement without asking for Wolfgang’s countersignature.
In discussing the legal consequences of the events of February 17 and 27,1 shall separately treat each possibility.
The impostor defense has elaborate roots in the common law, but for present purposes finds a sufficient provenance in section 3-405 of the Uniform Commercial Code, which, insofar as relevant, says: ‘1 An indorsement by any person in the name of a named payee is effective if (a) an impostor by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee ”.
This is language plain enough. The essence of the impostor defense is that the drawer or maker intends to issue the instrument to the impostor, albeit in the name of the person impersonated. Thus:
(1) X pretends to be A. If the drawer issues a check to X payable to A, the impostor defense is available. The drawer intended to issue the check to X, the impostor, albeit in the name of A, the person impersonated. A’s forged indorsement is effective.
(2) X falsely says that he is A’s agent. If the drawer issues a check to X payable to A, the impostor defense is not available. The drawer intended to issue the check to A, not to X. A’s forged indorsement is ineffective.
Other variations, not pertinent here, may suggest themselves. (See, e.g., Philadelphia Tit. Ins. Co. v. Fidelity-Philadelphia Trust Co., 419 Pa. 78.)
Federal made the checks in issue payable to Loretta. If it was Elizabeth Ann who presented the withdrawal orders, she was an impostor impersonating Loretta. The situation falls perforce within the first category described above, and Wolf *964 gang’s indorsement of Loretta’s name will be effective. Result: the complaint is dismissed.
If, on the other hand, it was Wolfgang, not Elizabeth Ann, who presented the withdrawal orders, Federal’s teller could not have believed the person before him to be Loretta. Plaintiff argues that this situation falls within the second category described above (Fidelity & Deposit Co. of Maryland v. Chemical Bank N. Y. Trust Co., 62 Misc 2d 509). There, X falsely represented that he was the agent of A, in reliance upon which representation a brokerage firm issued checks payable to A. The checks were subsequently indorsed in A’s name by a forger. The court held the forged indorsement to be ineffective because there had been only a false representation of agency, not an imposture. The crucial fact in that case is that the issuer was given nothing with which to ascertain the identity of the principal; it had by no means been deceived into thinking that X, with whom it dealt, was really A.
* This case is different. Here, assuming that it was Wolfgang who presented each withdrawal order, Federal did not rest content with his representation of authority. It proceeded to ascertain the identity of the principal by comparing the signature on Loretta’s account card with the signature on the withdrawal order. It satisfied itself that the person who had signed the withdrawal order was Loretta. To that person Federal made the checks payable. To that person’s purported agent Federal delivered the checks. With that person Federal wished to deal. And with that person Federal did ultimately deal, for it was that person and no other who indorsed the checks. In short, Wolfgang’s false representations of agency, if such there were, are beside the point. Federal was the victim of an imposture, surely covered by the phrase “ or otherwise ” in section 3-405. Instead of disguising himself as Loretta, Wolfgang used the withdrawal orders to persuade Federal that Loretta . Avas his principal. In truth there was no principal. There was only Wolfgang pretending to be Loretta by counterfeiting her signature. In algebraic terms: Federal issued the checks to X in A’s name; A was really X posing as A; Federal therefore intended to issue the checks to X, albeit in A’s name. The situation again falls Avithin the first category set forth above. Result: the complaint is dismissed.
Judgment will be entered dismissing the complaint on the merits and dismissing the third-party and fourth-party complaints as moot.

 Neither in that case nor in this is there a claim that the issuer was negligent within the meaning of section 3-406 of the Uniform Commercial Code.