547 So.2d 687 (1989)
BROWARD BANK, Appellant,
v.
COMMERCIAL BANK OF HOLLYWOOD, Appellee.
No. 87-1965.
District Court of Appeal of Florida, Fourth District.
July 26, 1989.
Mark S. Grand of Grand, Miller & Krause, Hollywood, for appellant.
Craig Z. Sherar of Atkinson, Jenne, Diner, Stone & Cohen, P.A., Hollywood, for appellee.
PER CURIAM.
This is an appeal from a final judgment in favor of the defendant/appellee, Commercial Bank, the collecting bank of a check with a forged endorsement.

STIPULATED FACTS:
Broward Bank (the Drawer Bank) made a loan on April 1, 1981 to Connie G. Seiz and Pamela L. Seiz, husband and wife, secured by a mortgage on their personal residence. The husband took the Note, Mortgage Deed and Right of Recision out of Broward Bank and brought them back *688 signed and the mortgage notarized. The husband did not represent to Broward Bank that he was the authorized agent for his wife. Broward Bank had no dealings or communications with Pamela L. Seiz or anyone who claimed to be such person with the exception of receiving documents with her forged signature. The husband attended the closing alone and Broward Bank issued a check for $35,433.24 representing partial loan proceeds. Another check for $76.76 represented a documentary stamps reimbursement. Both checks were made to the order of Connie G. Seiz and Pamela L. Seiz. Pamela Seiz's signatures were forged on the Note, Mortgage Deed and Right of Recision. The husband deposited both of the checks at Commercial Bank (the Collecting Bank) where he and his wife maintained a joint account with a signature card on file. The checks were endorsed by both the husband and wife but it was later discovered that the wife's endorsements were forged. The large check was deposited to an account in the name of Connie G. Seiz and Associations, Inc. upon which he had sole drawing rights. The other check was deposited to a joint account. Commercial Bank, the Collecting Bank stamped the checks with its endorsement and the notation "pay any Bank, P.E.G. Commercial Bank of Hollywood, Hollywood, Florida" (prior endorsements guaranteed). The Collecting Bank then forwarded the checks for collection and they were paid by the Drawer Bank. The forgeries were discovered when the Drawer Bank sued the Seizes for default on the loan. The loan was defaulted and the Drawer Bank (Broward Bank) lost its foreclosure action against the mortgagors because of the forged signature of the wife. Subsequently the Drawer Bank (Broward Bank) sought to recover from the Collecting Bank (Commercial Bank) the proceeds of the check which the Drawer Bank paid.

THE FINAL JUDGMENT:
The trial court ruled that Broward Bank, the bank which made the loan and issued the checks, should suffer the loss rather than Commercial Bank, the bank which received the deposit of the loan proceeds checks and paid them. The trial judge held that section 673.405(1)(a), Florida Statutes (1975) controlled the outcome. That section is a codification of what is known as the "Imposter Rule" under which an endorsement is effective, even though it is a forgery, if an imposter, by use of the mails or otherwise, has induced a lending bank to issue a check. Specifically, the trial court ruled:
Section 673.405(1)(a) Florida Statutes provides, in pertinent part, "An endorsement by any person in the name of a named payee is effective if an imposter . .. has induced the maker or drawer to issue the instrument to him ... in the name of the payee". The Florida Code Comments notes that this section names a forged instrument payable to the imposter. The Uniform Commercial Code Comment advises that ". .. the instrument does not become bearer paper, a purportedly regular chain in endorsements is required, but any person  first thief, second imposter or third murderer  can effectively endorse in the name of the payee ... [and] ... the loss, regardless of the type of fraud which the particular imposter has committed should fall upon the maker or drawer". The execution, albeit forged, of the note and mortgage on the underlying transaction formed the inducement for the issuance of the check by the maker or drawer. See Franklin National Bank v. Shapiro, 7 UCC Rep.Serv. 217 (N.Y.S.C., Nassau County, 1970). Thus, the forged endorsement is effective and the funds paid out thereunder not recoverable from the defendant bank.
Broward Bank appeals this adverse final judgment. Broward Bank argues that no impersonation took place and that all that occurred was a forgery. Broward Bank argues that the general rule applies and the forged signature was inoperative to transfer any interest in the instrument. Broward argues that if a forgery alone were enough to activate section 673.405(1)(a) then the rule would not be called the "Imposter Rule" at all, rather it would be called the "Forgery Rule." The appellee Collecting Bank responds that more *689 than a mere forgery is present under the facts of this case. The Collecting Bank argues that the signed documents (which included a Note, Mortgage, Disclosure Statement and Right of Recision) "induced" the bank to issue the loan proceeds check. Thus, the Collecting Bank argues that the application of the "Imposter Rule" is appropriate.
We disagree with the appellee and reverse. Under the appellee's interpretation of the imposter rule virtually every forgery would also constitute an "impersonation". We can not believe that that would be a correct use of the imposter rule. Without dispute, no one impersonated Pamela L. Seiz. Neither bank had contact with a person calling herself Pamela L. Seiz. Without an impersonation of Pamela L. Seiz the imposter rule is inapplicable. See East Gadsden Bank v. First City National Bank, 281 So.2d 431 (Ala. Civ. App. 1973); Franklin National Bank v. Chase Manhattan Bank, 68 Misc.2d 880, 328 N.Y.S.2d 25 (N.Y.S.Ct. 1972). But see, Fair Park National Bank v. Southwestern Investment Company, 541 S.W.2d 266 (Tex.Civ. App. 1976). Part of the rationale in these cases is based upon the maxium that between two innocent persons the one whose act was the cause of the loss should bear the consequences. These cases explain that the usual application of the "imposter rule" has involved ordinary commercial checks in which an imposter has assumed the identity of the payee. In such cases the primary liability for the loss has generally been placed upon the drawer or endorser who, being first deceived by the imposter, delivered the check to the imposter. In the instant case, it is clear that there was no imposture to induce Commercial Bank to accept the checks, there was merely a forgery. Commercial Bank should bear the loss for the forgery since it accepted the forged endorsement and guaranteed the prior endorsement. Further it should be pointed out that the husband and wife maintained a joint account with a signature card on file at Commercial Bank and Commercial Bank would have been in a better condition than Broward Bank to detect a forgery.
REVERSED AND REMANDED for further proceedings consistent herewith.
ANSTEAD and WALDEN, JJ., concur.
LETTS, J., dissents with opinion.
LETTS, Judge, dissenting.
In this appeal, two banks squabble over which one of them should bear the loss occasioned by forgery on loan documents and two loan proceeds checks. The trial court held that the bank which made the loan and issued the checks (the drawer bank) should suffer the loss rather than the bank which received the deposit of the loan proceeds checks and paid them (the collecting bank). I would affirm.
Mr. C. Seiz went to the Broward Bank to negotiate a loan. The bank agreed to make the loan, secured by a mortgage on his residence, title to which was also in his wife's name. The lender bank then prepared all the documentation which the husband took home for signature. Included in the completed, but unsigned package, was a note, a mortgage, a right of recision form and a disclosure statement, all of these requiring the signature of both husband and wife. He then returned to the bank with these documents duly signed, by himself and his wife, witnessed and notarized. Thereafter, the bank issued two loan proceeds checks made out to the husband and the wife, which he then took to the other bank in this dispute, where he and his wife had a joint checking account with a signature card on file. However, instead of depositing the checks in the joint account, he deposited them in a business account. Both checks bore endorsements by him and his wife. Every signature of the wife on all of these instruments listed above was a forgery perpetrated by the husband.
In reaching her conclusion, the trial judge held that section 673.405(1)(a), Florida Statutes (1975) controlled the outcome. Section 673.405(1)(a) is a codification of what is commonly known as the "Imposter Rule" under which an endorsement is effective, even though it is a forgery, if an *690 imposter, by use of the mails or otherwise, has induced a lending bank to issue a check. If applicable, as I believe it to be, the lending bank would bear the loss under the facts of this case.
The appellant/lending bank, and the majority, agree that no impersonation took place and that all that occurred was a forgery. As the lending bank sees it, if a forgery were to suffice, the rule would not be called the "Imposter Rule" at all, rather it would be called the "Forgery Rule". The appellee collecting bank responds by saying that something more than a forgery is present under the facts of this case which supports the application of the "Imposter Rule". As the collecting bank sees it, the something more is derived from the statutory required presence of an "inducement", in the form of the signed documents which included a note, mortgage, disclosure statement and right of recision. I agree that the submission of these additional documents, which the lending (drawer) bank required as a prerequisite to the making of the mortgage loan, was the inducement to issue the loan proceeds check.
The imposition of liability under the "Imposter Rule" has been explained by way of two theories: (1) "dominant intent" and (2) estoppel.
The dominant intent is the bank's intent to deal, not only with the wife whose signature has been forged, but also with the husband who impersonated his wife. Sub judice, there exists more than a forged endorsement on a check: there was a calculated scheme leading up to the issuance of the check during which the husband dealt extensively with the lender and impersonated his wife's participation on several documents. Franklin National Bank v. Shapiro, 7 U.C.C.Rep.Serv. 317 (N.Y.S.C. Nassau County 1970). There is no need for a face-to-face showdown meeting between the lender and the person whose signature has been forged for an impersonation to exist. Fair Park National Bank v. Southwestern Investment Company, 541 S.W.2d 266 (Tex.Civ.App. 1976).
As to estoppel, this is nothing other than a repetition of the classic equitable doctrine that, as between two innocent parties, the one whose conduct more clearly occasioned the loss should suffer. To quote from Franklin National Bank v. Shapiro:
The [lender] in the instant case adopted a procedure that was superficial and careless in establishing the identity of the [borrower].
Id. at 322.
Adapting this quote to the case at bar, the lending bank here engaged in an extended course of dealing, preparatory to the grant of a mortgage loan. I take judicial notice of the fact that standard lending practice calls for the verification of the identity of borrowers. Where mortgages and notes are not executed in front of the lender, the signatures thereon are universally requested to be verified. "Proper diligence and vigilance would have obviated the thievery practiced in this case." Franklin National Bank v. Shapiro, 7 U.C.C.Rep.Serv. at 322. The failure of the collecting bank to detect the forged endorsement on the check for the loan proceeds deposited pales by comparison with the negligence of the lender/drawer bank whose shortcomings were clearly the primary reason for the loss.
I would affirm.