Barbara PETERS and Daniel Peters,
Appellants–Plaintiffs,

v.

JUDD DRUGS, INC., d/b/a Judd
Pharmacy, Appellee–
Defendant.

No. 43A03–9205–CV–157.

Court of Appeals of Indiana,
Third District.

Nov. 5, 1992.

Transfer Denied Dec. 31, 1992.

David L. DeBoer, Roger A. Weitgenant, Blachly, Tabor, Bozik & Hartman, Valparaiso, for appellants-plaintiffs.

James S. Stephenson, John P. Daley, Jr., Stephenson & Kurnik, Indianapolis, for appellee-defendant.

HOFFMAN, Judge.

Appellants-plaintiffs Barbara and Daniel Peters appeal the entry of summary judgment in favor of appellant-defendant Judd Drugs, Inc., d/b/a Judd Pharmacy.

The facts relevant to the appeal disclose that Barbara Peters was a patient at the Hudson Medical Group in Elkhart, Indiana. Barbara was being treated for urethritis by the instillation of silver nitrate through a catheter. On December 3, 1986, Barbara went to Hudson for a treatment. The nurse who performed the instillation procedure at Hudson mistakenly retrieved a bottle containing a ten percent solution of potassium hydroxide from the medical supply room rather than a bottle of silver nitrate. Then, without reading the label on the bottle, the nurse instilled the potassium hydroxide solution. Barbara immediately complained of burning. Ultimately, the mistake was discovered by the nurse who performed the procedure.

Potassium hydroxide is a chemical subject to restricted sale. Potassium hydroxide has no medicinal purpose but is used at Hudson to prepare microscope slides in the laboratory. Normally at Hudson, potassium hydroxide was kept only in the laboratory and was never stored in the medical supply room where the silver nitrate was located.

In June 1986, Hudson ordered and received a pint bottle of ten percent solution of potassium hydroxide from Judd. The potassium hydroxide was packaged in an amber bottle with a white cap and a white typewritten label. The silver nitrate was packaged in the same manner; however, the potassium hydroxide bottle also had an orange sticker stating "For External Use Only."

On November 30, 1988, the Peters filed their complaint against Judd alleging negligence in placing potassium hydroxide in a bottle identical to the bottles used for silver nitrate without placing adequate warnings on the bottle of potassium hydroxide; alleging that such negligence resulted in Judd's sale of a defective product unreasonably dangerous to Barbara; and alleging breach of implied and expressed warranties. Judd filed its motion for summary judgment on December 16, 1991. On February 18, 1992, the trial court entered summary judgment in favor of Judd. This appeal ensued. Other facts appear below as necessary.

As restated, the Peters present two issues for review:

(1) whether the trial court employed an improper standard of review for summary judgment; and

(2) whether genuine issues of material fact exist as to the strict liability claim and the negligence claim against Judd.

As of the January 1, 1991 amendment to Ind.Trial Rule 56, the parties to a summary judgment proceeding must expressly designate to the trial court evidentiary matter which supports their respective positions. Ind.Trial Rule 56(C) provides:

"At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. A party opposing the motion shall also designate to the court each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto...."

Summary judgment is appropriate if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In reviewing a motion for summary judgment, this Court stands in the shoes of the trial court. This Court must liberally construe all designated evidentiary matter in favor of the non-moving party and resolve any doubt against the moving party. *State Bd. of Tax Com'rs v. New Energy Co.* (1992), Ind.App., 585 N.E.2d 38, 39. Even if it appears that the non-moving party will not succeed at trial, summary judgment is inappropriate where material facts conflict or undisputed facts lead to conflicting inferences. The existence of a genuine issue of material fact shall not be a ground for reversal on appeal unless such fact was designated to the trial court and is included in the record.

See *Block v. Lake Mortgage Company, et. al* (1992), Ind.App., 601 N.E.2d 449, 450;

T.R. 56(H).

Furthermore, this Court will affirm summary judgment so long as the designated evidentiary matter supports a legal theory which supports summary judgment.

The Peters do not direct this Court to any indication that the trial court employed an incorrect standard in entering summary judgment. Also as noted above, this Court stands in the shoes of the trial court when reviewing the entry of summary judgment. No ground for error exists.

Next, the Peters contend that a genuine issue of material fact exists as to a finding of strict liability. Pursuant to IND.CODE § 33-1-1.5-3 (1983 Supp.), strict liability in tort occurs when a seller "puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer." In its Brief of Appellee, Judd does not question the Peters' assertion that Judd is a seller and Barbara is a consumer or user. Instead, the focus is whether the product was defective.

IND.CODE § 33-1-1.5-2.5(b) (1983 Supp.) provides:

"A product is defective under this chapter if the seller fails to:

(1) properly package or label the product to give reasonable warnings of danger about the product; or

(2) give reasonably complete instructions on proper use of the product; when the seller, by exercising reasonable diligence, could have made such warnings or instructions available to the user or consumer."

Further, IND.CODE § 33-1-1.5-2.5(c) states:

"A product is not defective under this chapter if it is safe for reasonably expectable handling and consumption. If an injury results from handling, preparation for use, or consumption that is not reasonably expectable, the seller is not liable under this chapter."

The Peters argue that by packaging the potassium hydroxide in the same manner as medicine sent to Hudson, and by failing to place labels which warn against any use for humans, a genuine issue of material fact exists as to whether Judd sold a defective product.

Under IND.CODE § 33-1-1.5-2.5(c), the threshold question is whether there is "evidence that the supplier knew or had reason to know that the product was likely to be dangerous when used in a

foreseeable manner." *Hinkle v. Niehaus Lumber Co.* (1988), Ind., 525 N.E.2d 1243, 1245. As in *Hinkle,* here the evidence discloses that the supplier, Judd, and Hudson employees had no reasonable expectation that the potassium hydroxide would be stored with medicine, would be instilled into a patient, or would be used for any purpose other than the preparation of laboratory materials. Further, it was not foreseeable that a Hudson employee would use the potassium hydroxide without reading the label or the warning.

Additionally, the Peters cannot recover based upon a theory that the warning, "For External Use Only," was inadequate. As suggested by the Peters, the label did not foreclose the use of the product on humans externally, a purpose for which potassium hydroxide is unfit. However, in the present case, the nurse did not read and misconstrue the label. Instead, the product was used without regard to the label and was used internally which was specifically warned against by the label. No genuine issue of material fact exists as to a strict liability cause of action.

Finally, the Peters contend that the evidence discloses a genuine issue of material fact as to Judd's negligence. Specifically, the Peters complain that the warning label was insufficient to fulfill Judd's duty to warn Barbara of danger.

In *Ingram v. Hook's Drugs, Inc.* (1985), Ind.App., 476 N.E.2d 881, 885, it was determined that a pharmacist had no duty to warn a consumer of the possible side effects of a prescription drug prescribed by a physician. This Court reasoned that the physician acted as a "learned intermediary" between the pharmacy and the plaintiff. Here, any duty to warn would be even more tenuous than in *Ingram.* Judd had no contact with the physician's patient, and as noted above, additional warnings would not have assisted Barbara where the nurse did not read the label. No duty existed in the present case.

There being no finding of a genuine issue of material fact, the summary judgment is affirmed.

Affirmed.

GARRARD, and SHIELDS, JJ., concur.