MINSTER STATE BANK *vs.* BAYBANK MIDDLESEX.

Essex. January 4, 1993. - April 13, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Bank. Negotiable Instruments,* Indorsement, Forgery. *Warranty. Uniform Commercial Code,* Bank, Payment on negotiable instrument, Warranty. *Words,* "Impostor."

A husband who forged his wife's signature on a promissory note and, by the use of the mails or otherwise, induced the drawer bank to issue a bank customer's check payable to the order of both husband and wife was an "imposter" under G. L. c. 106, § 3-405, and consequently, upon the husband's endorsement of the check for himself and forgery of his wife's name on the check, the bank to which the check was deposited was not liable to the drawer bank on its claim that the depository bank was liable for warranting that "all signatures are genuine or authorized" under G. L. c. 106, § 4-207 (2) (*b*). [832-835] O'CONNOR, J., dissenting.

CIVIL ACTION commenced in the Salem Division of the District Court Department on September 27, 1990.

The case was heard by *Bonnie H. MacLeod-Griffin,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*James T. Connolly, Jr.* (*Grace G. Connolly* with him) for the plaintiff.

*Isaac H. Peres* (*Barry G. Braunstein* with him) for the defendant.

NOLAN, J. Edward Bauerband (Bauerband) and his wife (Michelle Bauerband) had been customers of Minster State Bank (Minster), an Ohio bank, for many years prior to the events in this case. Bauerband applied for a loan from Minster purportedly for himself and his wife. The loan officer knew both Bauerband and his wife. Minster mailed loan doc-

uments to Bauerband in Massachusetts, including a promissory note to be executed by Bauerband and his wife. Bauerband forged his wife's name on these documents. The signed note acknowledged falsely that Michelle had received a copy of the note. On return of these documents, Minster issued a bank customer's check payable to the order of both Bauerband and his wife and mailed it to their home in Massachusetts. Bauerband endorsed the check for himself, forged his wife's name on the check, and deposited the check into a business account which he maintained at BayBank Middlesex (BayBank). Bauerband's wife had no knowledge of the loan transaction, the note, or the check.

Minster claims that BayBank violated the warranty provisions of G. L. c. 106, § 4-207 (2) (*b*) (1990 ed.). In response, BayBank urges that Bauerband was an impostor which exculpates BayBank under the provisions of G. L. c. 106, § 3-405 (1) (1990 ed.).[1] Apart from the "impostor" statute, in the face of Bauerband's forgery of his wife's name on the check, BayBank would be liable for warranting to Minster that "all signatures are genuine or authorized" under G. L. c. 106, § 4-207 (2) (*b*).

The trial judge ruled on a motion for summary judgment that Bauerband was an impostor and ordered judgment for BayBank. Minster requested a report to the Appellate Division of the District Court Department which affirmed the judge's ruling and dismissed the report. Minster appealed and we transferred the case to this court on our own motion.

The narrow issue in this case is whether the forged endorsement by Bauerband of his wife's name makes him an impostor within the sweep of G. L. c. 106, § 3-405. He may be an impostor whether he acts face to face, by mail, or "otherwise." We do not get much help from the Uniform Commercial Code as to the meaning of "impostor" in its

---

[1]General Laws c. 106, § 3-405 (1990 ed.), in material part reads as follows: "(1) An indorsement by any person in the name of a named payee is effective if (*a*) an imposter by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee . . . ."

commercial law context except that the official comment on § 3-405 (1) provides that "[i]mpostor" refers to "impersonation." 2A U.L.A. 77, official comment 2 (Master ed. 1991).

We have not previously considered this question of who qualifies as an impostor[2] and there is precious little case law under the Uniform Commercial Code to help us. "[Q]uestions about who is and who is not an 'impostor' remain unanswered." J.J. White & R.S. Summers, 1 Uniform Commercial Code § 16-4, at 796 (3d ed. 1988). What cases exist fall on both sides of the question.

Two New York opinions support the proposition that an impostor was involved in the case before us. See *Franklin Nat'l Bank* v. *Shapiro*, 7 U.C.C. Rep. Serv. (Callaghan) 317, 320-321 (N.Y. Sup. Ct. 1970) (depository bank not liable to drawer bank when wife procured loans by mail on the purported signature of herself and her husband); *Fidelity & Deposit Co.* v. *Manufacturers Hanover Trust Co.*, 63 Misc. 2d 960, 964 (N.Y. Civ. Ct. 1970) (husband who presented withdrawal orders with wife's forged signature on them was impostor).[3]

Cases to the contrary are not particularly persuasive for our purposes. Where a person purporting to obtain an automobile loan presented forged documents from an automobile dealer to the lender, courts have rejected the impostor rule as to an instrument payable to the person and the dealer and have treated the matter as simply invoking misrepresentations. See *Valley Bank & Trust Co.* v. *Zions First Nat'l Bank*, 656 P.2d 425, 427 (Utah 1982); *East Gadsden Bank*

---

[2]The passing reference to § 3-405 (1) (*a*) in *Gordon* v. *State St. Bank & Trust Co.*, 361 Mass. 258, 261 (1972), is not informative for our purposes. The focus of that opinion was on the applicability of § 3-405 (1) (*b*). *Id.* at 261-262.

[3]Treatise comment is not extensive on this subject. See 2 Bender's U.C.C. Service, Commercial Paper § 3.08[2], at 3-50 (1993) ("if B writes to C saying that he or she is A and obtains an instrument payable to A, the instrument can be negotiated by anyone who signs A's name as an indorsement").

v. *First City Nat'l Bank*, 50 Ala. App. 576, 581 (1973).[4] In
*Broward Bank* v. *Commercial Bank*, 547 So. 2d 687, 689
(Fla. Dist. Ct. App. 1989) (two-to-one decision), the facts
are substantively the·same as in our case, and the court held
that the husband was not an impostor. In reaching this con-
clusion, the court erroneously stated that to rule otherwise
would mean that "virtually every forgery would also consti-
tute an 'impersonation.'" *Id.* The impersonation by forgery
that is crucial to the impostor defense under § 3-405 (1) is
one that is made to the drawer bank that issued the check
and not any impersonation inherent in the forged endorse-
ment presented to the collecting bank. See *id.* at 689, 690
(Letts, J., dissenting).

We obtain no insight from the law prior to the adoption of
the Uniform Commercial Code. Section 3-405 (1) (*a*) "has
no correlative section in the Uniform Negotiable Instruments
Law but does represent, to some extent, case law developed
prior to the drafting of the Code." 2 Bender's U.C.C. Ser-
vice, Commercial Paper § 3.08[2], at 3-48 (1993). But § 3-
405 (1) rejected pre-Code cases that distinguished between
face-to-face impersonation and those accomplished by mail
or over the telephone. See 2A U.L.A. 77, official comment 2
(Master ed. 1991); 2 Bender's U.C.C. Service, *supra* at 3-50.
Nor is there some apparent legislative purpose that can guide
us effectively to an answer as to whether there was an imper-
sonation by mail in this case. Proof of estoppel and relative
negligence play no role in the application of § 3-405 (1) (*a*).
If there was an impostor, equitable considerations are
irrelevant.

The only inquiry is whether Bauerband, as an impostor, by
the use of the mails or otherwise induced Minster to issue the
check to him in the name of the payees. By his conduct in
signing his wife's name to the promissory note and submit-
ting it to Minster, he was holding himself out as Michelle

---

[4]Massachusetts has not adopted the revision of § 3-404 which replaced
§ 3-405 (1) (*a*), (*b*). The revision does not concern the impostor rule as
applied to the case before this court. See revised art. 3, § 3-404, 2 U.L.A.
19, 96 (Master ed. 1991).

Bauerband in writing. In acknowledging that she will pay the note and that she had received a copy of it, Bauerband was purporting to be Michelle when he forged her name and sent the note to Minster. He was impersonating her, not in the literal "in person" sense, but "by use of the mails or otherwise," as stated in § 3-405 (1) (*a*). In signing Michelle's name to the note, Bauerband implicitly was indicating that he was Michelle. The fact that Bauerband also signed the note on his own behalf does not make him any less an impostor.[5] Therefore, we affirm the order of the Appellate Division dismissing the report.

*So ordered.*

O'CONNOR, J. (dissenting). BayBank Middlesex (Bay-Bank) accepted Minster State Bank's cashier's check for deposit and collection and transferred it to Minster, which paid it. Minster seeks repayment from BayBank on the ground that BayBank warranted to Minster that the payees' endorsements were genuine. See G. L. c. 106, § 4-207 (2) (*b*) (1990 ed.). Minster is entitled to recover unless Bauerband was an "impostor" who, by the use of mails or otherwise, induced Minster to issue the check to him payable to him and Michelle. G. L. c. 106, § 3-405 (1990 ed.).

Clearly, as the court's recitation of the relevant facts shows, Bauerband by fraud induced Minster to issue the check to him payable to himself and Michelle. However, in my view, it is equally clear that Bauerband was not an impostor, by the use of mail or otherwise, and therefore Minster is entitled to recover.

A District Court judge granted summary judgment to BayBank after concluding that Bauerband was an impostor by reason of his "impersonation of himself as Michelle's agent." The Appellate Division of the District Court Depart-

---

[5] A judgment by default was entered in the District Court as to Bauerband. He is not a party to the appeal.

ment dismissed the report and affirmed the judgment but rejected the judge's reasoning, concluding instead that Bauerband had "impersonated his wife's participation in the transaction with Minster at every relevant stage."

It is clear from the record that, although Bauerband perpetrated a fraud on Minster, he did not do so as an impostor. An impostor is "[o]ne who pretends to be somebody other than who he is, with intent to deceive . . . ." Black's Law Dictionary 756 (6th ed. 1990). An impostor speaks by act or word and he speaks about himself. He may speak by mail or otherwise, but he must speak to someone other than himself, he must speak in the present tense, and he must say that he is someone who in fact he is not. For a person to be an impostor by mail, he must state explicitly or implicitly in the mailed material that he is someone else. At no time, by mail or otherwise, did Bauerband explicitly or implicitly tell Minster that he was Michelle.

It is unclear whether the court has concluded that Bauerband impersonated Michelle when he signed her name to the note, or only when he sent the signed note to the bank. Surely, if Bauerband had destroyed the note immediately after signing Michelle's name to it, it could not reasonably be said that he had impersonated Michelle. Without communication there can be no impersonation. It may well be that, if Minster had sent the unsigned note to Michelle and the note had called for execution by Michelle alone, which was not the case, and Bauerband had forged her signature and returned the note to Minster without a covering letter, or with a letter purporting to have been sent by Michelle, impersonation would have occurred. Impersonation would have occurred in those circumstances because the mailing would have falsely represented that Michelle, not Bauerband, was the correspondent. However, the note in this case required execution by Bauerband and Michelle and it was not sent to Michelle alone. Thus, regardless of whether, when Bauerband returned the note, he did so without a covering letter to which he signed his name, a matter about which the record is silent, the mailing did not imply that Michelle was the corre-

spondent. Bauerband implied that Michelle had signed the note, and that was a lie, but he did not act as an impostor because he did not at any time represent to Minster that he was someone other than the person he was. Respectfully, to say as the Appellate Division said, that Bauerband impersonated "his wife's participation" is a misuse of the term "impersonated." A person can only impersonate another person; he cannot "impersonate" an activity. Bauerband "misrepresented" his wife's participation. He did not "impersonate" it, and he did not impersonate her.

The court cites with apparent approval two New York trial court opinions as supporting the court's result. The court rejects the contrary decisions of appellate courts in other jurisdictions as "not particularly persuasive for our purposes." *Ante* at 833. In my view, those cases are not fairly distinguishable from the present case and they ought not be so lightly dismissed. They were rightly decided. They are in accord both with sound logic and with the Supreme Judicial Court's dictum in *Gordon* v. *State St. Bank & Trust Co.*, 361 Mass. 258 (1972). In that case, the court dismissed, as unworthy of discussion, the thought that a man acted as an impostor within G. L. c. 106, § 3-405 (1) (*a*), when he induced a lender to issue a check by misrepresenting to the lender that the man's wife had signed the note when in fact, as in this case, the man had forged his wife's signature.

If the Legislature had intended that a forgery that induces a check's issuance should result in the risk of loss being placed on the drawer rather than on collecting banks, it could easily have so provided in the statute. Instead, the Legislature chose to place the risk on the drawer only when the drawer was induced to issue the check by fraud in the form of impersonation. Reasonable persons might differ as to whether, in the absence of a controlling statute, the loss in a case such as the one on review should fall on the drawer, which issued a check in reliance on documents with forged signatures, or instead should fall on the collecting bank which accepted a check with a forged endorsement. However, the Legislature has spoken, placing the loss on the col-

lecting bank, and the court is obliged to apply the statute as enacted. I would reverse the order of the Appellate Division dismissing the report, and I would remand the case for the entry of judgment for Minster State Bank.