**INTELOGIC TRACE TEXCOM GROUP, INC., Assignee of Asher Corporation, Appellant–Plaintiff,**

v.

**MERCHANTS NATIONAL BANK and David W. Haggard, Inc. d/b/a Zebone Jewelry, Co., Appellee–Defendants.**

No. 49A02–9208–CV–401.

Court of Appeals of Indiana, Second District.

Dec. 30, 1993.

Sue Figert Meyer Rubin & Levin, P.C., Indianapolis, for appellant-plaintiff.

James G. Lauck, Kroger Gardis & Regas, Indianapolis, for appellee-defendant Merchants Nat. Bank.

Larry D. Furnas, Furnas & Associates, P.C., Indianapolis, for appellee-defendant

David W. Haggard, Inc. d/b/a Zebone Jewelry Co.

SHIELDS, Judge.

Intelogic Trace Texcom Group (Intelogic), assignee of Asher Corporation, claims the trial court erred in granting the summary judgments sought by Merchants National Bank (Merchants) and David Haggard, Inc., d/b/a Zebone Jewelry Co. (Zebone) on Intelogic's claim, and in denying the summary judgments Intelogic sought against Merchants and Zebone.

We reverse and remand in part and affirm in part.

## ISSUE

This case asks us to consider the applicability of IC 26–1–3–405(1)(a) (1988), the so-called impostor rule, when forged documents are used to induce the maker or drawer to issue a negotiable instrument and the propriety of the trial court's decision granting summary judgment in favor of Merchants and Zebone based on this rule.

## FACTS

In early 1990, Miles England (England) contacted Asher Corporation (Asher) in Rowlett, Texas, regarding a lease-back of certain equipment. Although England operated a corporation known as Classic Printing, Inc. (Classic Printing), England represented to Asher that his business "was known as Hawks Sales Corporation." Record at 41. Asher initially responded to England's inquiry by contacting England on a designated telephone line at Classic Printing which was answered by England's

receptionist as "Hawks Sales Corporation." During the application process, England presumably submitted to Asher financial statements of Hawks Sales Corporation and of Harvey Hawks, the president of Hawks Sales Corporation.[1] The personal financial statement of Harvey Hawks was purportedly signed by Harvey Hawks.

On March 7, 1990, a lease-back agreement between Asher and Hawks Sales Corporation was purportedly signed by Harvey Hawks, as president of Hawks Sales Corporation.[2] The agreement represented the address of Hawks Sales Corporation as 500 North Capitol Avenue, Indianapolis, Indiana, the address of Classic Printing. Asher issued three checks[3] payable to Hawks Sales Corporation which it express-mailed to the 500 North Capitol Avenue address.

Upon receipt of the checks, England endorsed each check "Hawks Sales Corporation" and presented the checks to Zebone for amounts England owed its principal, David Haggard. Zebone contacted Asher to confirm that the first check was authentic and that England was authorized to hold the check. Based on Asher's confirmation of England's authority, Zebone did not make further inquiry of Asher when England presented it with the second and third checks. Zebone restrictively endorsed each check and deposited each in its account with Merchants. Each check was paid by the drawee bank, Team Bank in Texas, pursuant to normal bank collection practices.

On December 4, 1990, Intelogic, as assignee of Asher Corporation, filed a com-

---

1. The record does not reveal whether these documents were delivered to Asher before or after it entered the lease-back agreement with Hawks Sales Corporation, although it appears from the chronological nature of England's affidavit that "financial statements" were provided by England to Asher prior to Asher's decision to agree to the transaction. Record at 42.

2. Other documentation involved in this transaction bearing the purported signature of Harvey Hawks, both in his corporate and individual capacity, includes: schedules listing the equipment covered by the lease, dated March 7, 1990, March 12, 1990, March 20, 1990, and March 29,

1990; and a personal guaranty dated March 29, 1990 which misrepresented the address of Hawks Sales Corporation as that of Classic Printing. It also appears that an invoice, under the letterhead of Hawks Sales Corporation but showing the address of Classic Printing, was sent at some point in time by England to Asher.

3. The lease-back agreement indicates that it was signed by Harvey Hawks on March 7, 1990. The checks at issue in this case were dated March 4, 1990, March 12, 1990, and March 23, 1990.

plaint against Merchants and Zebone based on conversion and breach of the warranty of good title. Merchants filed a cross-claim against Zebone. All parties filed motions for summary judgment. A hearing was held on March 18, 1992, during which the trial court granted Merchants' motion and denied Intelogic's motion for summary judgment against Merchants. The court noted that it found "no genuine issue of material fact as to the effectiveness of the endorsements on the checks which are the subject of this action." Record at 398–99. In a subsequent entry, the trial court granted summary judgment in favor of Zebone and against Intelogic and declared Merchants' cross-claim against Zebone moot in light of the judgment in favor of Merchants.

## DISCUSSION

■ Ind.Trial Rule 56(C) places the burden to establish the propriety of a summary judgment on the moving party who must make a prima facie showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Babinchak v. Town of Chesterton* (1992), Ind.App., 598 N.E.2d 1099, 1101. It must meet this burden by "designat[ing] to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion."[4] T.R. 56(C); *Rosi v. Business Furniture Co.* (1993), Ind., 615 N.E.2d 431, 434. If the movant meets its burden, it then becomes incumbent upon the nonmovant to show specific facts indicating a genuine issue of material fact. *Babinchak*, 598 N.E.2d at 1101. The purpose of summary judgment is to terminate litigation when a factual issue does not exist and a case may be determined as a matter of law. *Skaggs v.*

*Merchants Retail Credit Ass'n* (1988), Ind. App., 519 N.E.2d 202, 203. Thus, all designated evidentiary matter is liberally construed in favor of the nonmoving party and all doubts will be resolved against the party seeking summary judgment. *Horn v. Klotz* (1992), Ind.App., 603 N.E.2d 870, 872.

### I.

The Uniform Commercial Code provision in dispute is § 3–405(1)(a), commonly known as the impostor rule, which reads:

An endorsement by any person in the name of the named payee is effective if ... an imposter by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee.

IC 26–1–3–405(1)(a).

■ A general principle underlying Article 3 of the Uniform Commercial Code is that the loss resulting from a forged indorsement should fall upon the party best able to prevent it. Thus, if an impostor induces the drawer to issue an instrument to the impostor or his confederate in the name of the payee, § 3–405(1)(a) effectively establishes negligence on the part of the drawer as a matter of law. *See* White & Summers, Uniform Commercial Code, § 16–4, at 793–94 (3d ed. 1988). The impostor rule "codifies the proposition that certain behavior is negligent and thus renders signatures resulting from that behavior effective against the negligent party." *Id.*

■ The acknowledged intent of § 3–405(1)(a) was to extend the application of the impostor rule which had been limited by some pre-Code law to only face-to-face impersonations. *Id.* at 795; *Fidelity & Deposit Co. of Maryland v. Chemical Bank of New York Trust Co.* (1970), 62

4. For purposes of our review, we consider only that material which the parties have designated to the trial court by reference to a particular location in the materials before that court. *See Czaja v. City of Butler* (1992), Ind.App., 604 N.E.2d 9, 10. The purpose underlying the amendment of T.R. 56(C) can be achieved only by requiring such a specific designation. *See Pierce v. Bank One–Franklin, N.A.* (1993), Ind.

App., 618 N.E.2d 16, 19 (if object of amendments was to limit scope of materials court would be obligated to sift through, then simply designating to the court everything in the record would defeat that purpose). Thus, attempts to designate various pleadings, discovery material, and affidavits in their entirety fail to meet the specificity required under T.R. 56(C).

Misc.2d 509, 513, 309 N.Y.S.2d 266, 272. As Official Comment 2 to 3–405 states:

Subsection (1)(a) is new. It rejects decisions which distinguish between face-to-face imposture and imposture by mail.... The result of the distinction [in these decisions] has been under some prior law, [sic] to throw the loss in the mail imposture forward to a subsequent holder or to the drawee.... The position here taken is that the loss, regardless of the type of fraud which the particular impostor has committed, should fall upon the maker or drawer.

U.C.C. § 3–405 official comment 2 (1990). *See also Franklin National Bank v. Shapiro,* 7 U.C.C.Rep.Serv. (Callaghan) 317, 321, 1970 WL 12588 (N.Y.Sup.Ct.1970) ("Under the Code, the drawer is made to bear the loss irrespective of the method of fraud or media of communication to consummate the deception.").

The parties disagree on the applicability of this rule to the facts of this case. Therefore, we must determine as a matter of law whether certain conduct could constitute an imposture before we can resolve whether the trial court's judgments for Merchants and Zebone are appropriate.

### A. Imposture "By Use of the Mails or Otherwise"

As the Supreme Court of Massachusetts noted, when forged documents are used as an inducement, " 'questions about who is and who is not an 'imposter' remain unanswered', ... [and w]hat cases exist fall on both sides of the question." *Minster State Bank v. Baybank Middlesex* (1993), 414 Mass. 831, 832, 611 N.E.2d 200, 201 (quoting White & Summers, Uniform Commercial Code § 16–4, at 796 (3d ed. 1988)).[5] One line of authority holds that the use of forged documents to procure a negotiable instrument constitutes an imposture covered by § 3–405(1)(a). *See Minster State Bank,* 414 Mass. 831, 611 N.E.2d 200 (husband impersonated wife when he forged

wife's signature to promissory note and acknowledgement); *Franklin Nat'l Bank v. Shapiro,* 7 U.C.C.Rep.Serv. 317, 1970 WL 12588 (forged endorsement was effective where drawer issued checks based on forged application and promissory note; wife or daughter apparently forged husband/father's signature); *Fidelity & Deposit Co. v. Manufacturers Hanover Trust Co.* (1970), 63 Misc.2d 960, 313 N.Y.S.2d 823 (imposture occurred if ex-husband presented withdrawal order bearing forged signature of ex-wife).

Other courts have rejected the impostor rule under similar circumstances. *See, e.g., Broward Bank v. Commercial Bank* (1989), Fl.Dist.Ct.App., 547 So.2d 687; *East Gadsden Bank v. First City Nat'l Bank* (1973), 50 Ala.App. 576, 281 So.2d 431. In *Broward Bank,* the trial court determined that an imposture occurred when a husband forged his wife's signature to a promissory note, mortgage deed, and right of rescission. A divided appellate court reversed, stating that if an imposture occurred under these facts, then "virtually every forgery would also constitute an 'impersonation.' Without dispute, no one impersonated [the wife]. Neither bank had contact with a person calling herself [the wife]." *Broward Bank,* 547 So.2d at 689. As the dissent noted, however, the facts revealed more than a simple forgery in that the forged documents induced the drawer to issue the check to the husband. *Id.* at 690 (Letts, J., dissenting).

Similarly, in *East Gadsden Bank,* the drawer issued a check to Mathis, who claimed he intended to buy a car with the funds. Mathis supplied the drawer bank with a purchase order purportedly signed by an authorized agent of Pierson Chevrolet, Inc., the company from which Mathis represented he was buying the car. Mathis presented the check with his endorsement and the forged endorsement of Pierson to East Gadsden Bank (East Gadsden), where he was a depositor. East Gadsden accept-

---

**5.** The paradigmatic example of the impostor defense arises when X, the impostor, pretends to be A, and the drawer delivers to X a check payable to A. *See Fidelity & Deposit Co. of*

*Maryland v. Manufacturers Hanover Trust Co.* (1970), 63 Misc.2d 960, 963, 313 N.Y.S.2d 823, 825–26.

ed the check and placed it in normal check clearing channels. First City National Bank of Gadsden (First City), the plaintiff and payor bank, paid the amount of the check to East Gadsden and charged the account of the drawer bank. First City credited the account of the drawer bank when it received notice that the endorsement of Pierson was forged. First City then demanded payment from East Gadsden and, when it refused, brought suit. East Gadsden defended on the basis of the impostor rule. The trial court entered judgment for First City. East Gadsden appealed.

The Court of Civil Appeals of Alabama first acknowledged that "[t]here is no contention that the drawer ... dealt with Mathis as an impersonator of Pierson Chevrolet, Inc. [sic] or that Mathis represented himself as the agent of Pierson. It was the intent of the drawer to deal both with Mathis and Pierson and it so issued the check." *East Gadsden Bank*, 50 Ala.App. at 580, 281 So.2d at 433–34. The appellate court then rejected the argument that Mathis committed an imposture by presenting the forged order allegedly signed by an agent of Pierson and affirmed the trial court's judgment, holding that the impostor rule refers to impersonation of "an identity, either real or fictitious, with which the drawer believes he is dealing." *Id.*, 281 So.2d at 433. No imposture occurred because Mathis "merely misrepresented that he was purchasing an automobile and secured a loan through such misrepresentation" and "strengthened his misrepresentation by a forged purchase order...." *Id.*, 281 So.2d at 433–34. According to the court, there "was no intent, fictional or otherwise, by the drawer that Mathis should supply the endorsement of Pierson Chevrolet, Inc. The drawer was entitled to

such endorsement...." *Id.*, 50 Ala.App. at 580–81, 281 So.2d at 434.[6]

■ We conclude that cases such as *Broward Bank* and *East Gadsden Bank*, which fail to recognize that impostures occur "by use of the mails or otherwise," are inconsistent with the policy of Article 3 and the language of § 3–405(1)(a). We find more persuasive those cases, such as *Minster State Bank*, which hold that an imposture occurs when an impostor forges documentation which induces the drawer to issue an instrument to the impostor or his confederate. Contrary to the suggestion in *Broward Bank*, this interpretation of the term "impostor," does not equate all forgeries to an impersonation; "[t]he impersonation by forgery that is crucial to the impostor defense under 3–405(1)(a) is one that is made to the drawer ... that issued the check and not any impersonation inherent in the forged endorsement presented to the collecting bank." *Minster State Bank*, 414 Mass. at 833, 611 N.E.2d at 201–02 (citations omitted).

Intelogic argues that the impostor rule, even as we interpret it (that an imposture covered by § 3–405(1)(a) can occur when an impostor submits forged documentation which induces the maker or drawer to issue a negotiable instrument to the impostor or a confederate), is inapplicable here because England merely misrepresented his agency status to Asher and thus did not commit an imposture. Intelogic basis this argument on official comment 2 to § 3–405 and cited cases. The second paragraph of official comment 2 states:

"Imposter" refers to impersonation, and does not extend to a false representation that the party is the authorized agent of the payee. The maker or drawer who takes the precaution of making the instrument payable to the principal is entitled to have his indorsement.[7]

6. The court thus appears to have applied the archaic "dominant intent" theory which has been rejected. *See Fidelity & Deposit Co. of Maryland v. Chemical Bank of New York Trust Co.*, 62 Misc.2d at 513, 309 N.Y.S.2d at 272; *Franklin National Bank v. Shapiro*, 7 U.C.C.Rep. Serv. at 321; White & Summers, Uniform Commercial Code § 16–4, at 795.

7. Although Indiana has not adopted the official comments of the Uniform Commercial Code, we consider them persuasive in interpreting the language of the Code. *First Nat'l Bank of Elkhart County v. Smoker* (1972), 153 Ind.App. 71, 81, 286 N.E.2d 203, 209; *United Bank of Crete-Steger v. Gainer Bank, N.A.* (1989), 7th Cir., 874 F.2d 475, 479.

■ Intelogic relies on the last sentence of this paragraph of official comment 2 to support its claim that it was entitled to the endorsement of Hawks Sales Corporation since the checks at issue were made payable to Hawks Sales Corporation. When read in context, however, this sentence applies when there has been *only* a misrepresentation of authority, (that is a misrepresentation of status), and is not intended to limit application of the impostor rule where an imposture has occurred.[8]

■ The situation where a person impersonates an authorized agent of the payee and that impersonation results in the issuance of an instrument to the impostor or confederate in the name of the purported agent's principal is indistinguishable from that where the imposture involves an impersonation of the named payee. In both instances, the determinative factor vis a vis the impostor rule is the existence of an imposture, regardless of whether the impostor impersonates the intended payee or the intended payee's agent. *See Minster State Bank*, 414 Mass. at 834, 611 N.E.2d at 202; *Franklin Nat'l Bank v. Shapiro*, 7 U.C.C.Rep.Serv. at 321. Thus, if the drawer is deceived because an individual poses as someone else, whether in writing, in person, or otherwise, and as a result of that deception the drawer is induced to deliver an instrument to the impostor or his confederate, the impostor rule applies, regardless of whether the impostor pretended to be the payee or an authorized agent of the intended payee. In fact, this is the position taken in the recently proposed Revised Article 3, *see* U.C.C. § 3–404(a) (Revised 1990), which Indiana and many other states have adopted and many others are considering. *See* IC 26–1–3–404(a) (West 1993); White & Summers, Uniform Commercial Code vol. 1B, at v. Under the Revised Article 3, the impostor rule is found in § 3–404(a), which states:

If an impostor, by use of the mails or otherwise, induced the issuer of an instrument to issue the instrument to the impostor ... by impersonating the payee of the instrument *or a person authorized to act for the payee*, an indorsement of the instrument by any person in the name of the payee is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.

U.C.C. § 3–404(a) (Revised 1990) (emphasis added).

■ Of course, a person could both misrepresent his authority as an agent (his status) and also impersonate the real agent of a principal. Were that situation to occur it would illustrate the critical difference between a misrepresentation and an impersonation. When a person honestly identifies him or herself, but falsely states that he or she is an agent of another, the person is misrepresenting his or her status; when a person impersonates a real agent, the person is impersonating another, that is, he or she is misrepresenting his or her identity. *See Franklin National Bank v. Shapiro*, 7 U.C.C.Rep.Serv. at 321. Although misrepresenting one's self as an agent and impersonating an agent are two different things, they are not mutually exclusive principles. Where an individual not only misstates his authority (that is, misrepresents his status) but also impersonates a party involved in the transaction (that is, commits an imposture), the language of § 3–405 requires that the imposture control if it is shown that the imposture, rather than the misstated authority, induced the maker or drawer to issue the instrument.

Here, it is undisputed that someone posed as Harvey Hawks when that person signed Harvey Hawks's name to the various documents. Therefore, applying § 3–405(1)(a) to this uncontroverted fact, an imposture occurred if Asher was induced to issue the instruments by the documentation which contained the forged signature of Harvey Hawks, either individually or in his capacity as an authorized agent of Hawks Sales Corporation. Having determined

---

**8.** See infra for an explanation of the distinction between a misrepresentation of status and an imposture.

that there is conduct that could constitute an imposture for purposes of § 3–405(1)(a), our next task is to determine whether a genuine issue of fact exists as to whether an imposture occurred here such that the trial court's several summary judgments are proper.

### B. Was There an Imposture Here?

■ The designated material reveals that in his conversations with Asher, England always presented himself in his true identity, that is, he always acknowledged he was Miles England. His only oral statement pertaining to Hawks Sales Corporation was that "his business was known as Hawks Sales Corporation." Record at 41. Further, the designated materials cannot establish that England impersonated Hawks Sales Corporation; a corporation is an artificial entity that can act only through its agents. Thus, while an individual can impersonate an agent of a corporation, it is axiomatic that an individual cannot impersonate a corporation.

However, the fact that England did not orally impersonate Harvey Hawks and that he could not impersonate Hawks Sales Corporation, does not end our inquiry. The question still remains whether the designated evidentiary material establishes, as a matter of law, that England was an impostor who by use of the mails or otherwise induced Asher to issue to him or his confederate a check in the name of Hawks Sales Corporation.

From the record before us, it is uncontroverted that some of the supporting documentation provided to Asher by England contained the forged signature of Harvey Hawks. Since we must resolve all doubts in favor of the nonmovant, however, we cannot find as a matter of law that Miles England forged these signatures; there is no designated evidentiary matter contain-

ing admissible evidence that would support such a conclusion. Moreover, even assuming that Miles England forged these signatures, there is nothing in the designated record that addresses the question whether Asher relied on these forged documents in making its decision to enter into the lease-back agreement with Hawks Sales Corporation.[9] Similarly, the designated record is silent on the question of to whom Asher issued the check—to Miles England or Hawks Sales Corporation. In sum, the existence of issues of material fact has not been negated by the parties having the burden to do so. Thus, although the impostor rule could be applicable and could effectuate the forged indorsements on the instruments in question, neither Merchants nor Zebone is entitled to judgment as a matter of law based on § 3–405(1)(a).

### C. An Alternative Basis for Summary Judgment?

■ Although summary judgment is not appropriate based upon the impostor rule, we must affirm the trial court's decision if the designated material supports summary judgment based upon an alternative legal theory. *Peters v. Judd Drugs, Inc.* (1992), Ind.App., 602 N.E.2d 162, 164.

■ Both Merchants and Zebone assert IC 26–1–3–406 (1988) (the negligence rule) as an alternative basis to support summary judgment. This statute provides:

> Any person who by his negligence substantially contributes to ... the making of an unauthorized signature is precluded from asserting the ... lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

IC 26–1–3–406. Summary judgment under this section requires uncontroverted evi-

---

**9.** We note that the designated material is subject to at least two conflicting inferences on the question of what induced Asher to issue the checks. Because the designated material reveals that England represented to Asher that his "business was known as Hawks Sales Corporation," it may have been this implied representation of authority that induced Asher to enter

into the agreement. Record at 41. On the other hand, Asher could have relied on the forged corporate and personal documents which England submitted to Asher. This latter scenario would constitute an imposture and, assuming all other elements of § 3–405(1)(a) are satisfied, the rule of that section would apply.

dence that: (1) Asher was negligent; (2) its negligence substantially contributed to the forged endorsements of England; and (3) both Merchants and Zebone were either holders in due course or paid the instruments in accordance with the reasonable commercial standards of their respective businesses. The designated material fails to do this. Neither Merchants nor Zebone have designated any material that establishes, as a matter of law, that Asher was negligent. Similarly, none of the designated evidentiary material indicates that either Merchants or Zebone was a holder in due course or acted in accordance with reasonable commercial standards. Thus, IC 26–1–3–406 does not support the trial court's grant of summary judgment in favor of Merchants and Zebone.

 Zebone argues that summary judgment is warranted in its favor due to IC 26–1–3–405(1)(c) (1988) (the padded payroll rule).[10] This section would require that England, as an agent or employee of Asher, or another agent or employee of Asher, supplied Asher with the name of Hawks Sales Corporation with the intent that Hawks Sales Corporation would have no interest in the instrument subsequently issued. While the designated record establishes that it was England's intention that Hawks Sales Corporation not have any interest in the checks, the record is silent regarding whether England was an agent or employee of Asher or whether another agent or employee of Asher supplied it with the name of Hawks Sales Corporation. with that same intent. Thus, the trial court's grant of summary judgment to Zebone cannot be affirmed on this basis.

The trial court's grant of summary judgment in favor of Merchants and Zebone on Intelogic's claim is erroneous.

## II.

Intelogic next argues that the trial court erred in denying its motions for summary judgment against both Merchants and Zebone. Intelogic's assertion rests entirely on its contention that the impostor rule is not applicable to the facts of this case and that, absent the rule, there is sufficient designated material to warrant summary judgment in its favor. Intelogic concedes, however, that if the impostor rule applies Intelogic cannot prevail.

For reasons set forth in Issue I, the designated material fails to negate the applicability of the imposter rule; that is, it failed to establish as a matter of law that an imposture covered by the terms of IC 26–1–3–405(1)(a) did not occur. Accordingly, Intelogic is not entitled to summary judgment on its claim.[11]

The trial court's orders granting summary judgment in favor of Merchants and Zebone are reversed. The trial court's decision denying Intelogic's motion for summary judgment is affirmed. This cause is remanded to the trial court for further proceedings consistent with this opinion.

SULLIVAN and BARTEAU, JJ., concur.

---

**10.** The padded payroll rule provides:
An endorsement by any person in the name of a named payee is effective if ... an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.
IC 26–1–3–405(1)(c).

**11.** The reversal of the trial court's decisions granting summary judgment in favor of Merchants and Zebone means that Merchants and Zebone failed to designate sufficient uncontroverted facts to establish, as a matter of law, the applicability of the impostor rule. However, in order to defend against Intelogic's motion, Merchants and Zebone were not required to satisfy the same burden of proof. Intelogic, as the movant, had the burden of establishing a prima facie case of the non-existence of a genuine issue of material fact and that it was entitled to judgment as a matter of law. Since Merchants and Zebone have raised a genuine issue of fact as to the applicability of the impostor defense, it is entirely consistent to reverse the trial court's order granting them summary judgment and also affirm the denial of Intelogic's motion. With cross-motions for summary judgment, the controlling factor is whether there exists a genuine issue of material fact and not whether the adverse party was successful. *Skaggs v. Merchants Retail Credit Ass'n,* 519 N.E.2d 202, 203.